## THRALL v. SMILEY et al.

In an action for an alleged libel, a variance between the date of the libel, as set forth in the complaint—the twenty-third of June—and the date as shown in the evidence—the twenty-fourth of June—is not material, unless the defence is misled by it.

To constitute a justification, in an action for a libel, the answer must aver the truth of the defamatory matter charged. It is not sufficient to set up facts which only tend to establish the truth of such matter. Without an averment of its truth, the facts detailed can only avail in mitigation of damages.

It is not error to exclude from the jury a diagram, where no drawing is necessary to illustrate the fact asserted.

Where the declarations of a party in a conversation are given in evidence, the whole conversation must be taken together, but the jury are not bound to give the same weight to all parts of it; they are at liberty to consider how much, under the circumstances, is entitled to credit.

Where a slip from a newspaper was handed by a deputy-sheriff to the jury, during the progress of the trial, containing matters relating to the trial, but not in evidence, and was perused by them, and the Court subsequently, upon discovery of the fact, instructed the jury that the slip was not in evidence, and that it should be wholly disregarded by them, and it appeared that the perusal could not, from the character of the matter contained in the slip, have prejudiced the losing party : Held, not to be a ground for a new trial.

The objection to the qualification of a juror, that his name was not on the venire returned by the sheriff, comes too late after verdict. The objection, if it had any validity, should have been urged at the trial.

The object of the law is to secure honest and intelligent men for the trial, and it is of no practical consequence in what order, or at what time during the term, they are summoned.

Unless the irregularity complained of in the formation of the jury goes to the merits of the trial, or leads to the inference of improper influence upon their conduct, their verdict should not be disturbed.

APPEAL from the District Court of the Twelfth Judicial District, County of San Francisco.

This was an action for damages against the defendants for an alleged libel upon plaintiff, in his profession as a dentist. George W. Smiley, one of the defendants, applied to the plaintiff, Dr. H. H. Thrall, a dentist, to extract for him a tooth, which operation the latter undertook to perform. The tooth was a back molar, of the lower jaw. The tooth was so situated that the dentist deemed it best to draw it inwardly ; and in performing the operation, the instrument came in contact with the cutting edge of the two upper and projecting front teeth, by means whereof they were broken on the under and upper side. The immediate cause of the accident does not appear, as no one was in the room at the time, and there was no positive testimony on the subject. A few days after the extracting of the tooth, there appeared in

the San Francisco Evening Bulletin of the twenty-fourth of June, 1857, the following card :

"Dr. H. H. Thrall, Dentist.—The public are hereby cautioned against employing the professional services of the above-named individual, whom I hereby denounce as a miserable bungler, and a disgrace on the profession he presumes to follow.
                                                "George W. Smiley."

This card was published daily for one week, and also another one, of like import, about the same period in the Alta California, a daily newspaper. Thomas Smiley, brother of George, aided and counseled his brother in the publication of the card, and took a great interest therein. Thrall then instituted this action, laying his damages at $10,000.

Thomas Smiley answered, denying the allegations in plaintiff's complaint. George Smiley answered as follows : "He admits that he wrote and procured to be published the two cards mentioned in the plaintiff's complaint in the several newspapers therein alleged, but he denies that he did so maliciously or with any other purpose than to warn the public of the true professional character of the plaintiff, and to prevent him from inflicting upon others in want of the assistance and professional services of a dentist, injuries of like character to those hereinafter stated to have been inflicted by said plaintiff upon this defendant." The answer then avers that this defendant, being induced by the advertised card of plaintiff as a dentist, applied to him to have a tooth extracted, and "that plaintiff so managed the said operation that by reason of his want of skill he broke and mutilated two of the front teeth of the defendant, to his great pain and damage, by reason of which this defendant was obliged to have the teeth, so mutilated, filed down, cut off and shortened," etc., "all of which was occasioned by the professional carelessness and ignorance of the plaintiff." The cards read in evidence were in the language of those set forth in the complaint, and the same which the defendant, George Smiley, admits to be true, excepting only a slight discrepancy of dates at the foot of one of the cards. The date of the card set forth in the second count of the complaint is the twenty-third of June, and that shown in evidence was the twenty-fourth of June. On the trial, on the examination of one of defendant's witnesses, at a point in his testimony where he was describing the injury to the defendant's teeth, a diagram of the teeth was shown the witness, which he said was a correct representation of the broken teeth before and after they were injured, and which drawing the defendants' counsel offered to exhibit to the jury. The Court refused to allow the same to be exhibited to the jury, and defendants excepted.

After the close of the testimony, the counsel of the defendants asked the Court to instruct the jury as follows:

"1. If the publication was made only for the purpose of giving notice to the community, and from good motives, and upon probable grounds, and reasons which you are satisfied from the evidence were good, and that there was good reason therefor, by reason of bad treatment to George Smiley, at the hands of the plaintiff, in performing the operation upon his teeth, and if you are satisfied that the defendants were not actuated by bad, malicious, or evil motives, but only to publish to the world what they believed to be the fact, the plaintiff can not recover.

"2. If the jury are satisfied that the plaintiff did do George Smiley an injury to his teeth, as alleged, in a bungling, grossly negligent, and unskillful manner, and the defendants were actuated only by good motives, they knowing that this plaintiff had acted in such an unskillful and grossly negligent manner, for the simple purpose of preventing other injuries of a like character being committed on other persons by the same party, the plaintiff can not recover; and

"3. In judging of the degree of skill of the plaintiff in this case, regard is to be had to the advanced state of the profession of dentists at the time, and if the plaintiff, in extracting the defendant's tooth, could have used an instrument less objectionable than the one used, and such instrument was in common use among the profession, it is *prima facie* evidence of a want of surgical skill on the part of the plaintiff in performing the operation."

Which instructions the Court refused to give, and the defendants' counsel excepted.

The Court instructed the jury that the answer of the defendant, George Smiley, did not amount to a justification of the alleged libel, as it did not aver the truth of the defamatory matter charged.

The plaintiff had judgment for $3,500. The defendants moved the Court for a new trial, and amongst other grounds alleged the following: *first,* misconduct of the jury in the progress of the trial; and, *second,* disqualification of one of the jurors. The facts necessary to understand the points here raised, appear in the opinion of the Court. The motion for a new trial was denied, and the defendants appealed to this Court.

*Heydenfeldt and E. Cook* for Appellant.

1. The variance in the date of the alleged libel is fatal. The complaint purports to set out the libel in *hæc verba*. 1 T. R., 656; 1 H. Black., 49; 2 G. R., 491; 1 C. Plead., 257; 2 Price R., 189; 1 Star Ev., 385.

In the description of libels or other written instruments which are set out according to their tenor, every part necessarily oper-

Thrall *v.* Smiley.

ates by way of description of the whole, for the libel alleged can not be the same with that proved when they vary as to any part, however unimportant.    1 Greenlf. Ev., § 58. "Dates, etc., must be precisely proved."    10 Ver., 410; 20 Vermont.

In attempting to recite a writing in *hæc verba,* the pleader must be holden to great strictness.    If there is but the omission or substitution of a single word, there is a variance.    The writings are not the same.

Action in the case for libel, the greatest strictness required when the count is in *hæc verba.*    2 Tyler Rep., 148, Olive *v.* Chipman.    Words and figures require exact coincidence of language.    Com. *v.* Stow, 1 Mass. Rep., 54.    Date or time of a record must be literally proved.    3 Wash. C. C. Rep., 31, 41.

Jones *v.* Cook, 1 Cow. 313, shows that the same exactitude obtains in New York.    The execution is not set out in *hæc verba.* The plaintiff is not bound to prove immaterial matter, unless set out in this manner in his pleadings.    1 Cow. & Hill's notes, p. 683, note 376.

2. The Court erred in not allowing the witness to exhibit to the jury a drawing of the teeth, showing their condition both before and after the breakage.

3. As to the paper improperly given to the jury by the officer. Such evidence so improperly before the jury, is ground for a new trial.    5 Mass., 405; 5 Pick., 296.

4. As to the question whether the defendants are precluded by not having objected to the juror, when they were ignorant of his disqualification, vide King *v.* Trueman, 3 Barn. & Cress., 452; Jordan *v.* Meredith, 1 Birm., 27; Commonwealth *v.* Stowell, 9 Met. Rep., 572.    The *scienter* on the part of the defendant as to the fact constituting error, is assigned as the ground of judgment.    17 Ala. Rep., 434.

5. The Court erred in refusing to instruct the jury as requested.

6. The Court erred in charging the jury that the defendant, George Smiley, had not justified by his answer.

The Court, therefore, took from the jury the power of deciding whether, upon the evidence, the plaintiff was or was not a bungler in his profession.

The jury may well have said, from the character of the operation upon Smiley's tooth, that Thrall was a bungler in his profession.

The Court then, in substance, told the jury that unless Smiley could prove that Thrall was a bungler, generally, in his profession, and never extracted a tooth properly, they must find for plaintiff.

*S. M. Bowman* for Respondent.

I. Variance between the libels set forth in the complaint and the card shown in evidence.

The answer of Thomas Smiley, being a general denial, it became necessary for the plaintiff, in order to connect him with the libels in question, to prove at the trial they were published at his instance and request, and that he declared himself to be the author of them.    So far as his co-defendant was concerned, his answer admitted the allegations of the complaint in that regard, and it was not necessary, nor was any evidence offered to fix him as having made the publications.

The cards offered were in the precise language of those set forth in the complaint, and exactly the same which George Smiley admits to be true, excepting only a slight discrepancy of dates at the foot of the cards, which constitute no part of the slanderous words.

Is this discrepancy of date material?    Was the defendant objecting injured by it?    These are the tests by which the validity of the alleged error must be tried.

It is frankly admitted that cases may be found, especially in the old reports, in which a very rigid rule has been maintained in regard to variance, so much so, that the dotting of an *i* and the crossing of a *t* have been held to be material.    But, as was truthfully remarked by the Court below, on this point, in refusing a new trial, " for a long time, the Parliament of Great Britain, and the Legislatures of the States of the Union, have, by statutory enactments, endeavored to compel the courts to disregard variances of this kind, where no injury can result to the party objecting, and of late years the Courts are becoming more liberal in carrying these beneficent provisions into effect."

And the citation of a few cases will show how reluctantly Courts acknowledged the supremacy of the rule, even before the recent statutes.

" Small variance—as if the declaration on a bill is, *that he will pay*, and the bill says, *if he will pay*, the variance is immaterial." 5 Com. Dig. B. 4.

In 2d Salk., 659, the deed declared on was dated the thirtieth of March, *Anno Domini* 1701; the oyer was thirtieth of March, 1701, and held no variance.

See, also, Henry *v.* Brown, 19 Johns. R., 49 ; Emery *v.* Merwin, 6 Cow., 360 ; Janson *v.* Ostrander, 1 Cow., 685; Commonwealth *v.* Bailey, 1 Mass., 62 ; Allen *v.* Jarvis, 20 Conn., 38.

It was argued against us, on the motion for new trial below, with much apparent zeal, that the Legislature of this State had repudiated the modern doctrine of variance, and had wholly omitted in our Practice Act to enact the one hundred and sixty-ninth section of the New York Code, although the Code was imitated in almost every other respect, and it has hence inferred we

are remitted back to the old common law rule of technical variance.

But it is a mistake to suppose the Legislature has repudiated this doctrine. On the contrary, it has in another section of our Practice Act provided for the same evil in a different way :

"No exception shall be regarded on a motion for a new trial, or on appeal, unless the exception be material, and affect the substantial rights of the parties. Prac. Act, § 188.

II. The Court below did not err in refusing to allow a drawing to go to the jury, showing the teeth both before and after they were injured.

The testimony offered was immaterial. It was not a case in which engravings or drawings would be necessary to communicate the facts intended. It was not an action of ejectment, in which a survey and plat, by an authorized surveyor, would be admissible to show boundaries. It was not a case of patent right of some complicated machinery, where a drawing might be useful to show the exact infringement complained of. Nor was the witness an expert, called upon to demonstrate some scientific fact not understood by common minds, wherein drawings might be useful to illustrate such fact. He was not deaf and dumb, that signs and pictures were necessary for the communication of his ideas. The picture was not even made by the witness. It was partial, showing only two teeth, disconnected from the other teeth. It was only calculated to deceive and mislead the jury. Besides, the dentist who examined the teeth immediately afterwards, and who repaired them, was on the witness-stand; and the defendant was also in Court, and exhibited his teeth to the jury for their actual inspection. This was better evidence than any mere picture, which, from the very nature of things, could not be accurate. And if the engraving was not admissible, because of its immateriality and deceptive character, in the very nature of things how could it be expected the witness could make it better with a piece of paper and pencil?

III. But it is said the jury were guilty of misconduct, and a new trial should have been granted on that account.

The misconduct complained of consists in the fact that the jury saw and read a certain card, which had been published in the newspapers, signed by the principal dentists of San Francisco, showing the plaintiff stood high in his profession among his professional brethren. The card complained of, was on a printed slip, cut from a newspaper, and contained at the top, first, the libel sued for; next, the dentists' card, which had been reproduced and republished by George W. Smiley, and next, an additional card of his own, in which he attempted to counteract the beneficial result which might accrue to the plaintiff from a testimonial so complimentary as the dentists' card. The lower card contained exaggerated cuts of defendant's teeth "both be-

fore and after the accident," similar to that rejected as evidence. The slip was taken by the bailiff from the table of defendants' counsel, and by him handed to one of the jury. It can be seen at a glance, the paper could only prejudice the plaintiff. The plaintiff's counsel, on observing the jury examining the slip, called the attention of the Court to the fact, and the Court, at his request, ordered the jury to hand it back to the place where it came from, and charged them that it was not evidence, and that it should be wholly disregarded by the jury.

Besides, the dentists' card and its contents had been mentioned by every dentist who testified at the trial, without objection, and the jury knew as much about it before they saw it, as they did afterwards. So that it is hard to perceive how, under any circumstances, the appellants were injured in the premises. Peacham v. Carter, 21 Vt., 515.

IV. Wm. H. Kirby, one of the jurors who tried the cause, was not disqualified to act as such.

The alleged disqualification consists in the fact that he was not on the *venire* returned by the sheriff. It seems, however, he was summoned, and his name regularly entered on the minutes by the clerk, at the commencement of the term; that he appeared and answered when his name was called, and was ordered to take his seat in the jury-box, and that no objection was made by defendants when the case was tried.

The answer to appellants' ground is, that the objection comes too late after verdict. If it has any validity, it should have been urged at the trial. A party can not be allowed to quietly lay by, and carelessly accept a jury, and then go on to trial, taking his chances of a verdict in his favor, and, when finding it adverse, turn round and say, "there was a juror on the panel who was not regularly served, and for that reason must have a new trial." If such a rule prevailed, there would be no telling when a cause is tried, and Courts would be called upon to set aside verdicts and try causes over and over again without end; for it is seldom the law is strictly complied with in selecting juries. The statute is merely directory. The object of the law is to assemble together a number of suitable citizens out of which may be selected juries to try causes. The parties who have causes to be tried seldom take the trouble to inquire into the regularity of the steps taken, in procuring the attendance of these gentlemen. It is enough for them that a sufficient number of good men are in Court to constitute the jury. But if so disposed, the time to inquire into any such irregularity is when these gentlemen are arrayed before the parties for their challenge. And if a party fails to inquire, and omits to object to a juror at this time, he waives the irregularity, and can not afterwards object. Page v. Inhabitants of D., 7 Metcalf, 327; Cole v. Perry, 6 Conn., 584; Greenup v. Stoker, 3 Gilman, 202; People v. Ransom, 7 Wen.,

421; Munroe v. Brigham, 19 Pick., 368; Presbury v. Common-wealth, 9 Dana, 203; see, also, Summary of Eng. and Am. Authorities in Graham's Practice, 747–8.

It is not pretended the juror was there at the instance or procurement of plaintiff, or that he was tampered with; nor does the affidavit of defendants show their counsel were not aware of the irregularity complained of, nor does it appear how or wherein they were injured. Even in a criminal case this must be shown affirmatively. For the necessity of showing counsel ignorant of the alleged fact, see Anderson v. State, 14 Geo., 709.

FIELD, J., delivered the opinion of the Court—BURNETT, J., concurring.

This is an action for an alleged libel upon the plaintiff in his profession as a dentist. The variance between the date of the libel as set forth in the second count of the complaint—the 23d of June—and the date as shown in the evidence—the 24th of June—was immaterial. The defendants were not misled by it; at least they do not pretend they were misled. If they were prejudiced by it they should have shown to the Court in what respect, to entitle the objection to consideration.

The answer of the defendant, George Smiley, does not contain a justification of the publication. To constitute a justification, the answer should have averred the truth of the defamatory matter charged. It was not sufficient to set up facts which only tended to establish the truth of such matter. The averment of its truth was essential, without which, the facts detailed could only avail in mitigation of damages. (Practice Act, § 63.) The injury received in the operation described by the defendant, may have been occasioned by the unskillfulness of the plaintiff; still, under the answer, it could not justify the sweeping denunciation that he was "a miserable bungler, and a disgrace" to his profession.

There was no error in excluding from the jury the diagram exhibiting the condition of the teeth of the defendant, George Smiley, both before and after they were injured. This is not a case in which a drawing was necessary to illustrate the fact asserted. The extent of the injury to the two front teeth could be as well understood from the statement of the dentist who repaired them.

The instructions requested by the defendants were properly refused. The first three are based upon the idea that the answer amounted to a plea of justification. The motives with which the publication was made, and the unskillfulness of the plaintiff exhibited in his operation, could not defeat a recovery under the answer; they were facts to be proved in mitigation of damages. The fourth instruction requested is covered by the charge of the Court, which states with accuracy the rule as to

the declarations of the defendants.  The whole conversation was to be taken together, but the jury were not bound to give the same weight to all parts of it; they were at liberty to consider how much, under the circumstances, was entitled to credit.

The motion for a new trial was urged on the ground of misconduct of the jury in the progress of the trial, and the disqualification of one of the jurors.  The alleged misconduct consisted in the perusal of a slip from a newspaper containing the libel upon which the action is brought, a card signed by several dentists of San Francisco, recommending the plaintiff as a careful and competent operator, and a second card by the defendant, George Smiley, exhibiting a drawing of his teeth before and after they were injured.  The slip was taken from the table of the defendants' counsel, and handed to the jury by the deputy-sheriff.  Immediately upon its discovery, the plaintiff's counsel called the attention of the Court to the fact, and by its order the slip was returned to the defendants, and the jury were instructed that it was not in evidence, and should be wholly disregarded.  The perusal of the slip was highly improper, but it could not have prejudiced the defendants.  The libel was already in evidence; the dentists' card had been mentioned by several of the witnesses without objection, and the jury were informed of its character and contents; and the second card of the defendant, George Smiley, contained a drawing similar to the one offered by his counsel, and excluded by the Court.  The plaintiff was the only party who had a right to complain of the conduct of the jury.

The alleged disqualification of one of the jurors consists in the fact that his name was not on the *venire* returned by the sheriff.  It appears, however, that he had been summoned at the commencement of the term, and that his name was entered on the minutes, and placed in the box, and drawn for the trial in the same manner as the other jurors were drawn.  The objection, if it had any validity, should have been urged at the trial; it comes too late after verdict.  The object of the law is to secure honest and intelligent men for the trial, and it is of no practical consequence in what order, or at what time during the term, they are summoned.  It would be productive of great hardship to permit a second trial upon a ground so technical and unsubstantial.  Unless the irregularity complained of in the formation of the jury goes to the merits of the trial, or leads to the inference of improper influence upon their conduct, their verdict should not be disturbed.  (King v. Hart, 4 Barn. & Ald., 430 ; United States v. Gilbert, 2 Sum., 19 ; People v. Ransom, 7 Wend., 417; Ambush v. Hadley, 4 Pick., 38 ; Commonwealth v. Norfolk, 5 Mass., 435.)

In Page v. Inhabitants of Danvers, (7 Metcalf, 327,) it was objected that certain of the jurors who sat in the case were not selected in conformity with law, and were not qualified to act, and

that this fact the parties had for the first time learned since the trial and decision; but the Court, per Shaw, C. J., said, "If there was any irregularity in the manner of selecting the jury, and if this would have been good ground of exception, if seasonably taken, still it came too late, after proceeding to trial. The ground is, not that the jurors were interested or prejudiced, or otherwise personally improper, but that there was a mere irregularity, not apparently affecting the merits.  Such an objection, if available at all, must be seasonably taken.  This results from strong considerations of policy and expediency, rendering it an imperative rule of practice."

Judgment affirmed.