DENNIS C. FEELY, Respondent, *v.* GILBERT E. JONES, as Treasurer of the New York Times, Appellant.

*Libel — justification — facts set up in an answer, not alleging the truth of the alleged libel, go only in mitigation of damages.*

The answer in an action brought to recover damages for libel, in order to amount to a justification, must be as broad as the charges made in the complaint, and must aver the truth of the defamatory matter charged. It is not sufficient to set up facts which only tend to establish the truth of such matter, and facts so set up in an answer, without an averment of the truth of the defamatory matter, can be only available in mitigation of damages.

APPEAL by the defendant, Gilbert E. Jones, as treasurer of the New York *Times*, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Monroe on the 11th day of May, 1893, upon the verdict of a jury rendered after a trial at the Monroe Circuit, and also from an order entered in said clerk's office on the 7th day of June, 1893, denying the defendant's motion for a new trial made upon the minutes.

*Henry Yonge*, for the appellant.

*John Van Voorhis*, for the respondent.

LEWIS, J. :

This is an action of libel brought against the defendant for publishing an article charging the plaintiff, who is a lawyer, with dishonesty in his profession. The plaintiff was, at the time of the publication of the article, the nominee for the office of Attorney-General of the State upon the Henry George ticket.

A copy of the article was set out in the complaint. It was headed: " A specimen George man. Engaged in eating up a widow's estate. A leaf from the professional record of the George party's candidate for Attorney-General."

The article is dated Rochester, October nineteenth. It proceeds to state that " The candidate of the George party for Attorney-General is D. C. Feely, a lawyer of this city. A case is now before the surrogate of Monroe county, in which Mr. Feely figures in a role not altogether new to the legal profession, but one which invites criticism and contempt.

" As attorney and claimant, he, sometime ago, set about eating up a widow's estate. He has not concluded his meal, but that is more the fault of the authorities who have interrupted its progress."

It further stated that a widow by the name of Anna Kane had died in the city, leaving a small estate of about $6,000, and that " it seems to have occurred to kind neighbors that the proper disposal of this estate demanded its distribution among themselves. At all events plans were laid to seize it, and in their perfection Mr. Feely has played an eager lawyer's part. A number of creditors have filed claims against it, which are as ingenious as they are exorbitant. Mr. Feely is their attorney, and nobly has he risen to meet their demands upon his talent." That the sum total of the claims is nearly $5,000, or almost the amount of the widow's savings.

" Their very nature suggests the extreme difficulty often encountered by lawyers in drafting bills of particulars in delicate cases. Counsel Feely early sought to have an administrator of this estate, a friend of his, appointed.

" In this he was disappointed, for the surrogate selected the county treasurer, Alexander McVean, and upon him as administrator has fallen the examination of these so-called claims.     *     *     *

" First upon the roll of creditors is D. C. Feely, who, for legal services rendered from June, 1880, to May, 1886, at the request of

the deceased, wants the sum of $500. He does not specify the nature of his services otherwise than legal." And then follow statements as to the particulars of other claims presented by other claimants, and states "client No. 2 is Mary A. Kane, for whom Mr. Feely asks the sum of $1,268.16.

" Her bill is longer than that of Barnstable and is brimful of particulars. Her memory carries her back no further than the law of limitation allows. * * * For instance, in November, 1880, she paid for cloth for two night dresses for the deceased the sum of $1.25, and for making the same $1.00.

" Her mind, presumably owing to the inspiring power of her lawyer, grips a large variety of details for the bill of 1881 as a feminine mind naturally would under a pressure of circumstances. * * * Administrator McVean, after some investigation, has practically decided that these claims are fishy. He will so report to the surrogate. If Mr. Feely is not ridiculed out of court by that time, he can go before a referee and take his chances of establishing these claims by testimony. Meanwhile the widow's savings will remain in good hands, and the rights of the heirs will be respected and properly protected."

The complaint alleges that the defendant intended thereby to charge the plaintiff with misconduct and fraud in the practice of his said profession; with being dishonest, and with distributing to himself and others property which did not belong to him or them, and with filing claims against the estate of Anna Kane which were fictitious and fraudulent, and manufacturing such claims. and attempting to get a friend of his appointed as administrator of that estate improperly, intending thereby to charge the plaintiff with breach of trust, extortion and larceny.

The first count of defendant's answer denies the allegations of the complaint, except that the plaintiff was an attorney and had practiced law in Rochester.

For a second defense the answer alleges that the plaintiff was a candidate of the George party for Attorney-General, and that one Anna Kane, a widow, died intestate at Rochester, leaving an estate amounting in all to about $6,000, and that the plaintiff as attorney for Mary A. Kane, an alleged creditor of the deceased, applied to the surrogate of Monroe county for letters of administration upon

the estate of the deceased; that his application was refused, and the surrogate appointed the county treasurer, and that thereafter the following claims were presented against the estate, viz. : Mary Ann Kane, for $1,268.16; Patrick J. Cumings, for $989.16; Mary Laddy or Leddy, for $800; Elizabeth Bostable or Barnstable, for $520, and D. C. Feely, for $500.

And then follow detailed statements of the items of the accounts. The answer further alleges that said claims were exorbitant and unjust, and that the administrator rejected all of them; that they were thereupon referred pursuant to the statute, except the claim of Elizabeth Bostable, which was withdrawn; that all the claims dated back to 1880, six years prior to the death of the deceased, and that there was no record that any of the claims were presented to the deceased prior to her death, and that if said claims had been allowed they would have eaten up the greater part of the estate, and that said claims, except that of Elizabeth Bostable or Barnstable, were finally allowed in part as follows: Mary A. Kane, $866.16; Patrick J. Cumings, $250; Mary Leddy or Laddy, $488, and Dennis C. Feely, $355; that the deceased was buried by an undertaker in Rochester, who gave the deceased a funeral, the grandeur of which was inconsistent with the position that the deceased had occupied during life, and charged her estate thereafter $357.22.

The third count of the answer consisted of a repetition of the denials and allegations contained in the second count, which are pleaded as a partial defense and in mitigation of damages.

The trial court held that the answer was not sufficiently broad to amount to a justification, but that the facts alleged were proper to be proved in mitigation of damages.

An answer to amount to a justification must be as broad as the charges in the complaint. This answer manifestly did not come up to this rule. Notably, it failed to justify the charge that the plaintiff conspired with others as an attorney in preparing and presenting fraudulent claims against the estate.

Every allegation of the answer might be true and yet the plaintiff have been entirely innocent of any misconduct so far as his relations to the claims presented on behalf of his clients are concerned.

The answer does allege that the claims were exorbitant and unjust, but it nowhere alleges that the plaintiff had any knowledge or

information which should have led him to suppose that they were improper claims.

Again, the answer failed to justify the charge that the plaintiff sought to have a friend appointed administrator of the estate. There was an imputation in the article in that regard that the plaintiff sought to procure the appointment of a friend as administrator with a view of thereby promoting the allowance of the claims. There was nothing in the answer, nor in the evidence, which tended to sustain this imputation.

It is the contention of the defendant that the accounts themselves furnished intrinsic evidence that they were fraudulent. There is no allegation in the answer to that effect, and we fail to find such evidence upon the face of the accounts. Neither was there anything in the disparity between the amount of the claims presented and the amounts allowed by the referee, which necessarily tended to show that they were fraudulently made.

The claimant Mary Ann Kane presented a claim of $1,268.16, and was allowed $866.16; Mary Leddy presented a claim of $800, and was allowed $488; the plaintiff presented an account for $500, and was allowed $355; Patrick J. Cumings presented an account for $989.16, and was allowed only $250.

While the disparity between Cumings claim, as presented, and the amount allowed by the referee, might be some evidence of its fraudulent character, the plaintiff is not charged with having acted as Cumings' attorney, or with having had anything to do with him or his claim.

To constitute a justification in an action for libel the answer must aver the truth of the defamatory matter charged. It is not sufficient to set up facts which only tend to establish the truth of such matter. Without an averment of its truth the facts detailed can only avail in mitigation of damages. (*Thrall* v. *Smiley*, 9 Cal. 529; Newall on Defamation, Slander and Libel, 660, 661; *Wachter* v. *Quenzer*, 29 N. Y. 547–551.)

The trial court, we think, properly held that the allegations in the answer did not constitute a justification. We find nothing in the exceptions of the defendant calling for a new trial.

The judgment and order appealed from should be affirmed.

DWIGHT, P. J., and HAIGHT, J., concurred; BRADLEY, J., not sitting.

Judgment and order appealed from affirmed.