ALVAH E. LEAVITT ET AL. v. DOLLY STANSELL.

*Consideration— Witness cannot be contradicted on collateral matters.*

Where the only question at issue is, whether property was transferred under one contract or another, and no question of fraud is raised, there is no ground for cross-examining a party as to the value of the consideration.

An answer by a witness to a question that is purely collateral and cannot arise under any issue raised in the case, is not open to contradiction.

Error to Wayne.    Submitted October 8.    Decided October 20.

TROVER.    Defendants bring error.    Reversed.

*D. C. Holbrook* for plaintiffs in error.

*Fraser & Gates* for defendant in error.

CAMPBELL, J.    Defendant in error, Mrs. Stansell, brought trover for the conversion of a considerable amount of live stock, farm utensils and some other articles, which she claimed were taken from her wrongfully on the 24th of March, 1879, by defendants below.

Their right was derived from Sarah E. Warren, wife of John Warren, who claimed to have purchased the property through a bargain made by John Warren with Garrett Stansell, husband of Dolly Stansell.    The testimony on their behalf showed a written agreement between Garrett Stansell and John Warren whereby Stansell agreed to sell Warren a farm in Wayne county and the personal property in question

in exchange for certain real estate in Detroit, and 75 shares of stock in the Detroit Machine & Manufacturing Company, with a further consideration of $2500 in cash, and a second mortgage on the farm subject to a first mortgage, if not more than $3000. This written agreement was made December 5, 1878.

On the 11th of December, 1878, Dolly Stansell and Garrett Stansell executed a deed of the farm to Mrs. Warren, and Garrett Stansell gave her a bill of sale of the personal property, and Warren and wife made the payment and transfers called for by the written agreement, to Dolly Stansell.

To make out her case Mrs. Stansell introduced evidence to prove that she was the owner of the farm and personalty and did not know of or authorize the written agreement or bill of sale; that she made an agreement personally with John Warren upon the same terms as the written agreement, except that the personal property was to be retained by her and delivered over in case the $2500 second mortgage was paid in sixty days. Defendant introduced evidence to show Mrs. Stansell's knowledge of and assent to the agreement made by Garrett Stansell.

John Warren was sworn as a witness and testified to the agreement for an absolute sale and that there was no such oral agreement as Mrs. Stansell set up; that possession was at once given of the personal property and retained till defendants took it under a chattel mortgage. He also testified to the circumstances of the passage of consideration, and the value of the stock and lot in Detroit which formed part of it.

He was then asked, whether in conversation with a Mrs. Kennedy he had not told her—1. That a span of gray horses, being part of the personal property in question, were worth as much as all the property he gave for the farm. 2. That the real estate in Detroit deeded to plaintiff was mortgaged for more than it was worth, and that a year before he tried to raise $200 on it and could not get it. 3. That the stock in said manufacturing company was good for nothing. 4. That he met Stansell in good humor and brought him into the law

office and made out the papers so quick that he thought him under the influence of liquor.

To each of these questions he answered in the negative. Plaintiff then called Mrs. Kennedy who was allowed under objection to testify that he made those statements. This is alleged as error. It is claimed by defendant in error to have been proper impeaching testimony.

The only disputed issue between the parties was as to the agreement for the transfer of the personal property. Plaintiff introduced no testimony to question the consideration which was to be received by her. It was to be the Detroit property and stock, and the second mortgage on the farm. She offered no evidence to show the value of any part of it, and the second mortgage which she took ran for a year. There is no testimony tending to show any representation or supposition on either side concerning the value of any of the property conveyed by either. Each assumed the determination of that for themselves. The dispute therefore was only whether the written agreement or the alleged verbal agreement was the one actually made.

If the written agreement was the one to which Mrs. Stansell assented, it could not be important to know anything else about their dealings. If the verbal contract was the one actually concluded, then, as Stansell was no party to it, it could make no difference what was done with him. The question whether Warren did or did not take him by surprise could be of no possible consequence, except in some proceeding to avoid the contract for fraud. No such issue was presented in this case, and that question was clearly collateral, and its answer by Warren was not open to contradiction.

The gist of the other three questions was to show that Warren had stated that he had got the property without any adequate equivalent, and for a consideration which was entirely worthless. These statements would also have been material if the issue was one of fraud. But they do not seem to bear at all upon the question which of the two contracts was made. If he had stated to any one that there had

been no sale, or only a conditional sale of the personalty—that, if denied, would have been material to the issue and a good ground for impeachment. But there was no question of value involved.

It is claimed, however, that evidence of want of value in the consideration would have a tendency to show that only the farm was sold absolutely, and that it was unlikely Mrs. Stansell would sell the personalty without receiving a larger payment.

Possibly if she had introduced evidence of the relative value of the property as understood by the parties, it might have had such bearing, although somewhat remote. But she raised no such issue. She made no attempt, either in opening or rebutting, to prove that the consideration was not abundantly valuable. It cannot be claimed that Warren's admissions would be receivable for any such purpose.

Moreover no testimony of admissions or otherwise could be pertinent to show the probability of retaining possession of the personalty, unless it bore upon the relative value of the various considerations as estimated by the parties at the time. Proof of the utter worthlessness of the consideration might show fraud, but it could not tend to show that Mrs. Stansell was willing to part with her farm but not with its stock. Nothing that did not tend to show some fact that would be likely to govern parties in their dealings could be pertinent to such an inquiry.

The ruling was erroneous. Judgment must be reversed with costs and a new trial granted.

MARSTON, C. J., and GRAVES, J., concurred.

COOLEY, J. I concur in the result.