AMOS FENSTERMAKER, APPELLANT, v. THE TRIBUNE PUBLISHING COMPANY, RESPONDENT.[1]

1. LIBEL.—LIBELOUS ARTICLE REFERRING TO A FAMILY OR CLASS.—PLEADING.—ADMISSIONS IN ANSWER.—2 Comp. Laws 1888, § 3246, provides, that in an action for libel, it is not necessary to state in the complaint any intrinsic facts for the pupose of showing the application to the plaintiff of the defamatory matter out of which the action arose; but it is sufficient to state generally, that the same was published concerning the plaintiff, and if such allegation be controverted, the plaintiff must

---

[1] Petition for a rehearing granted, and on rehearing modified July 6, 1896.

establish on the trial that it was so published. The libelous article sued upon referred to the Fenstermakers and the Fenstermaker family residing upon the Box Elder ranch. Plaintiff alleged that he resided upon the Box Elder ranch and was the head of the family residing thereon, and that defendant published the false, malicious and defamatory article of and concerning him. Defendant denied in its answer that the publication was false or malicious, or that defendant published any false or defamatory matter of or concerning the plaintiff. *Held*, that the answer admitted that defendant published the article in question of and concerning the plaintiff and obviated the necessity of alleging by way of innuendo or of proving at the trial how the defamatory matter had special application to the plaintiff.

2. ID.—ID.—WHO MAY MAINTAIN ACTION.—PROVINCE OF JURY.— Where a libelous article refers to a family or class of individuals any one of the family or class may maintain an action therefor by proving that the article had application to him, the determination of which is within the province of a jury.

3. ID.—PLEAS OF JUSTIFICATION AND MITIGATION.—SEMBLE.—Under the provisions of the Code (2 Comp. Laws 1888, § 3247), the defendant may deny, generally or specially, the material allegations of the complaint, and at the same time plead the truth of the matter charged as defamatory, and any mitigating circumstances, and whether he prove the justification or not, he may give in evidence the mitigating circumstances. *Semble*, that the pleas, both of justification and mitigation may be stated in one plea if the answer clearly indicates that the facts and circumstances so pleaded are tendered, both by way of justification and in mitigation.

4. ID.—ID.—SCOPE OF THE PLEA OF JUSTIFICATION.—The provisions of the Code (2 Comp. Laws 1888, § 3247), do not abrogate the rule that justification must be specially pleaded, and the particular facts averring the truth of the imputation, generally or specially, must be clearly set forth. The justification must fully meet the charge averring the facts showing it to be true, and present them in traversible form, and also meet the points in the sense imputed to them in the innuendo.

5. ID.—ID.—ID.—WHEN GENERAL ALLEGATION OF TRUTH IS A SUFFICIENT PLEA OF JUSTIFCATION AND WHEN NOT.—Where the charge in a libelous article is certain and specific, a general

allegation of its truth is sufficient as a plea of justification, but where the imputation complained of is a conclusion or inference from certain facts, the plea of justification must aver the existence of a state of facts which will warrant the inference of the charge.

6. ID.—ID.—PLEA IN MITIGATION.—FORMER RULE ABROGATED BY STATUTE.—PLEA MUST SET FORTH SPECIFIC FACTS.—The former rule that evidence in mitigation could only be given when the defendant admitted the charge to be false, and any evidence offered tending to prove the truth of the charge was inadmissible, has been abrogated by statute (2 Comp. Laws 1888, § 3247), yet, notwithstanding this statute, the facts relied on in mitigation must be specifically set forth in the answer, nor does the provision that the answer may allege both the truth of the matter charged as defamatory and in mitigation mean that it may be alleged in general terms without any statement of facts or particular circumstances.

7. ID.—ID.—LIBELOUS ARTICLE PURPORTING TO BE DERIVED FROM THE WRITER'S OWN KNOWLEDGE.—WHEN SOURCES OF INFORMATION NOT STATED IN LIBEL, THEY CANNOT BE SHOWN IN EVIDENCE IN MITIGATION OF DAMAGES.—Where a libelous article fails to state the sources of information, but purports to be derived from the writer's own knowledge, evidence that the facts were stated to him as true by a third person is incompetent and in support of a plea of justification it is both incompetent and hearsay, and it is also incompetent in support of a plea in mitigation, unless the article states the sources of information and the plea avers the facts specifically as that prior to the publication defendant received the information contained in the article and from such sources as induced an honest belief in its truth, since plaintiff is entitled to know the character of the proof to be offered either in justification or in mitigation, and the answer must specifically point it out.

8. ID.—ID.—EVIDENCE.—HEARSAY.—RES GESTAE—In an action for libel for charging that plaintiff had turned a little girl out upon the desert to starve, and had told her to leave and never come back again, statements made by the child when found, are incompetent and hearsay, and being a narration of past events are inadmissible as part of the *res gestae.* Evidence of these statements is incompetent in support of the plea of justification, and cannot be received in mitigation to disprove malice,

where the answer does not recite the facts and circumstances concerning which the witness testified and the communication by them to defendant. *Quaere,* that even if the defendant, in its plea in mitigation had specifically pleaded the facts and circumstances concerning which the witnesses testified and the communication by them to defendant, would evidence of the statements made by the child when found have been admissible where the libelous article charged that the child lived with plaintiff on his ranch until a certain time, "When she was told to get out and go somewhere they didn't care where, and never come back again," since the article upon its face states the fact absolutely as of the writer's own knowledge, and not as having come from any statement made by the child?

9. ID.—EVIDENCE.—CROSS-EXAMINATION ON COLLATERAL AND IMMATERIAL ISSUES.—IMPEACHMENT.—In an action for libel for charging plaintiff with having driven a child away from his ranch upon a desert to die, plaintiff's wife testified that the child was in the habit of running away without cause, and that upon the occasion referred to in the article, she had clandestinely departed, and though diligent search was made she could not be found, and also of her affectionate regard for the child. Upon cross-examination, the court permitted defendant to question her concerning her treatment of other children she had taken to rear for the purpose of showing she had treated them with great cruelty, to which questions, plaintiff objected on the ground that they were irrelevant and immaterial, and also upon collateral issues, which objection the court overruled. The court afterward permitted witnesses in sur-rebuttal to contradict and deny the statements made by plaintiff's wife as to her treatment of other children, to which plaintiff objected on the ground that having cross-examined his witness on immaterial and collateral issues, defendant had made her its own witness and was bound by the answers given, and could not impeach her testimony by contradiction, which objection the court overruled. *Held, error,* in each instance, in that: *First*—Even if plaintiff had been on trial for inhuman treatment of the child in question, it was incompetent to show that his treatment of other children had been cruel. *Second*—Plaintiff's wife not being plaintiff, her general reputation for treatment of children was not in issue, and her treatment of other children, or even of the child in question, did not tend to prove or disprove the truth of the charge

against the plaintiff, and hence was foreign to the issues, immaterial and collateral. *Third*—That having cross-examined plaintiff's wife on immaterial and collateral issues, defendant had made her its own witness in these respects, and could not impeach her testimony by contradiction.

10. ID.—CHARGE TO JURY.—RULE TO DETERMINE MEASURE OF DAMAGES.—In an action for libel against the defendant, a publishing company, the court, in announcing the rule of damages, instructed the jury that if defendant published "a libelous article in good faith as a matter of news, without actual malice against the plaintiff, it is no defense to the action; but such fact should be considered in mitigation of damages, and it, with other mitigating circumstances may be sufficient to reduce the damages to a mere minimum. * * * * It is not the policy and spirit of the law to unnecessarily or arbitrarily abridge the freedom of the press, but the law recognizes the press as a potent factor in society for good, and it is proper for you to bear this in mind in determining the question of damages in this case, if you find in favor of the plaintiff." *Held*, both erroneous and misleading. *First*—Erroneous in that it did not announce the proper rule to determine the measure of damages, as plaintiff did not seek punitive damages or rely upon express malice, but only the actual damages sustained by the publication of the libelous article and relied only upon implied malice, which the law imputed if the article was false. *Second*—Misleading, in that the charge that "the law recognizes the press as a potent factor in society for good," might easily mislead the jury to believe that newspapers possessed immunity from damages for defamatory publications, and that the good accomplished by them should be regarded as an adequate compensation for the wrongs done to individuals.

11. ID.—IMPLIED MALICE.—ACTUAL DAMAGES.—EVIDENCE IN MITIGATION.—In an action for libel charging plaintiff with cruelty and inhuman conduct toward a child, notwithstanding plaintiff may claim only actual damages and may rely only upon implied malice, yet, even then, evidence in mitigation is admissible.

12. ID.—CHARGE TO JURY.—GENERAL REPUTATION OF PLAINTIFF'S FAMILY.—EVIDENCE.—In an action for libel for charging plaintiff with cruel and inhuman treatment of a child living in his

family, the court instructed the jury that "the general charac-
ter of the plaintiff's family at the time the alleged libel was
published is at issue, and it is proper for it to be considered
by the jury, because such character is the foundation of the
plaintiff's claim for damages." *Held, error,* in that the reputa-
tion of the plaintiff, and not that of his family was in issue,
and there was no evidence impeaching the plaintiff's character
or reputation, and that the fact that some members of his
household may have had unsavory reputations, did not lessen
the plaintiff's right to recover damages when his own reputa-
tion was slandered or libeled.

(No. 579.   Decided Dec. 21, 1895.   43 P. R. 112.)

APPEAL from the district court of the Third Judicial
District.   Hon. George W. Bartch, *Judge.*

Action for libel by Amos Fenstermaker against the
Tribune Publishing Company.   From a judgment for de-
fendant, plaintiff appeals.   *Reversed.*

*Mr. John M. Zane* and *Mr. James A. Williams,* for
appellant.

The complaint averred that plaintiff was one of the
persons defamed, and alleged the extraneous circumstances,
showing that the plaintiff was referred *to,* and averred
that the publication was concerning the plaintiff.   Not one
of these circumstances or allegations was denied.   No
issue of fact thereon arose, but the following cases show
that each one of the Fenstermaker family residing at Box
Elder ranch had his or her action for libel:   4 Coke's Rep.
17 b; *Smart* v. *Blanchard,* 42 N. H. 137; *Ryckman* v.
*Delevan,* 25 Wend. 186; *Byer* v. *Fireman's Journal Co.,*
11 Daly (N. Y.), 257; *Gidney* v. *Blakes,* 11 Johns. (N.
Y.) 54.

Certain other errors are predicated on the defendant's
pleading.   His answer averred the truth of the charge
generally, and proceeded to aver certain facts, which did

not amount to a justification, and averred that they were pleaded both in justification and mitigation.

The law as to a justification is that it must fully meet the charge, aver the facts that show the charge to be true, and set them forth in a traversible form, and defendant must justify the words in the sense imputed to them by the innuendo. Newell on Defamation, etc., p. 653 *et seq.*, 796 *et seq.*

In this case the respondent seeks to claim that while the facts stated do not make a justification, still the averment in the answer, generally, that the charge was true, is sufficient. But that is not the law. *Tilson* v. *Clarke*, 45 Barb. (N. Y.) 178; *Downey* v. *Dillon*, 52 Ind. 442; *Bissell* v. *Cornell*, 24 Wend. 354; *Shepherd* v. *Merrill*, 13 Johns. 475; *Sumnam* v. *Brewin*, 52 Ind. 140; *Thrall* v. *Smiley*, 9 Cal. 529; especially, *Van Ness* v. *Hamilton*, 19 Johns. (N. Y.) 349.

Now, in this case, it was necessary to make the plea of justification good, for the defendant to allege in his plea facts showing that the charge was true, so as to give plaintiff notice of them and to put those facts in a traversible form. No attempt was made to do this, but defendant claims that the charge being specific, the justification might be general.

Evidence which is admissible in justification is not admissible in mitigation, and there being no proper plea of justification, all the evidence as to the finding of the child on the desert and her condition was not evidence in mitigation, because if good for any purpose it tended to prove the truth of the charge. Newell on Def. and Slander, p. 882, p. 897.

Then comes in the principle that facts in mitigation must be pleaded in order to be proven.

Our statute says, 2 Comp. Laws, p. 251, § 3247, that defendant may allege any mitigating circumstances and

give them in evidence. While this statute abrogates the old rule that mitigation and justification cannot be tried together, yet it introduces the new element that mitigating circumstances must be pleaded, and are no longer admissible under the general issue, though it is proper to say the general issue was not pleaded in this action. This is the holding of the courts upon this statute. *Reify* v. *Timm*, 53 Wis. 63, 10 N. W. Rep. 5; *Battell* v. *Wallace*, 30 Fed. Rep. 229; *Willover* v. *Hill*, 72 N. Y. 36.

Now, as to the second point, the libel did not purport to be published upon the authority of another, and hence the fact that it was so published was wholly inadmissible. Odgers on Libel and Slander, p. 302, and many authorities cited; Newell on Def., etc., p. 894, and many authorities cited; *Marker* v. *Dunn*, 68 Iowa, 720; *Talbot* v. *Clark*, 2 Moo. and Rob, 312.

Therefore on either ground, these communications to the defendant, not having been pleaded and not being referred to in the article, were inadmissible in evidence.

Other errors are assigned upon the admission of

### HEARSAY EVIDENCE.

The sixth error, the seventh error, the eighth error, the twelfth error, were all reports of conversations between third parties. The sixth and eighth errors are concerned with the question of mitigation, the remaining errors just specified are reports of what the child said. They have been already shown to be not admissible in mitigation because the statement did not purport to be made on their authority, and because they were not shown to have been communicated to the defendant. *Hatfield* v. *Lasher*, 57 How. Pr. 258; 17 Hun 23; *Morey* v. *Morning Jour. Ass'n*, 1 N. Y. Supp. 475.

It needs no argument to show that these statements were

the baldest hearsay, and were therefore incompetent, irrelevant and immaterial. Now, even conceding the defendant had pleaded a justification, these statements were not competent to prove the truth of the charge. The test is: If plaintiff was being prosecuted for turning out the child, could the statements of the child made to third parties, out of the plaintiff's presence, be given in evidence? Most assuredly not. No authority is necessary, but we cite one to show how ancient is the principle that has been violated. On the trial of Braddon and Speke, 9 How. St. Tr., Col. 1179 (1684), evidence was attempted to be introduced of what another woman had said. L. C. J., said: " Why, if that woman were here herself, if she did say it and would not swear it, we could not hear her. How, then, can her saying be an evidence before us? I wonder to hear any man that wears a gown to make a doubt of it. Why, gentlemen, what are we doing all this time? Do you think we sit here for nothing? Is not this the first time that a report was given as evidence in Westminster Hall? "

It is not necessary to argue that such statements are not part of the *res gestæ*, because they are confessedly narrations of past events, and are no part of the driving out of the child.

The next errors assigned are in regard to the evidence admitted of

### FAMILY REPUTATION.

It should be remembered that plaintiff was suing for damages to his own reputation, and defendant had admitted the libel was published of the plaintiff; yet the defendant, we presume on the theory that he was suing for damages to the reputation, not of himself but of his whole family connection, was permitted to offer evidence that the reputation of the Fenstermaker family was bad. The witnesses could not say who composed that family, nor who were

residing on the ranch at the time; yet the court permitted plaintiff in rebuttal to prove that plaintiff's reputation was good. Thus the learned court got upon both sides of the question. If it was right first, it was wrong the second time. The court even went further, and permitted evidence to be given that the ranch was a rendezvous of horsethieves, and as to the reputation of Willard Carter.

This must be error. Can it be possible that a newspaper can say all the members of the Fenstermaker family have committed an inhuman act, then admit that the libel was published of one certain member of that family, and when it is shown that the libel holds that particular one up to public hatred and scorn, and he sues for damages to his character, he can be told that, though his own character is spotless, he cannot recover because the character of some other members of his family is such that it has rendered the reputation of his family bad? How can a family have a reputation? Can one or two black sheep render a family's reputation worthless? There is hardly any large family that has not one or two erring members. This idea reduces law to an absurdity. If the character of one member of a family has continued good, while others have disgraced it, it simply shows that that one must be blameless. No authority can be cited on such a point, because this is, no doubt, the first time such an extraordinary proposition has been endorsed by any court.

The court continued its error where it charged that if any member of the plaintiff's family over whom he had control compelled the child to leave the house and wander on the desert, the charge was justified. In other words, plaintiff is on trial for a crime, and all you have to prove is that some member of his family committed the crime, provided plaintiff had control as husband or father, or head of the family. This is a new and extraordinary species of vicarious crime, a new and startling extension

of the theory that what a wife does in her husband's presence, is the act of her husband, to the whole family connection. The instruction does not require that plaintiff should know of the act or be aware of it. He might be asleep, he might be away from home, yet he is responsible for all his family's acts.

### ERRORS ON CROSS-EXAMINATION.

Caroline Fenstermaker, wife of the plaintiff, was asked on cross-examination as to how she treated other children she had taken to rear. This was objected to on the ground that it was not proper cross-examination, and irrelevant and immaterial. It made no difference to the issue on trial, how she treated children. But taking even the court's remarkable theory, the question would be how she treated this particular child. It is elementary that one cannot prove a person guilty of one charge in order to show her guilty of another. It was not permissible to prove that she mistreated Ethel Crockett, in order to show that she mistreated Caroline Hansen. As to her general reputation for mistreating children, even that, if admissible, could not be proven by specific acts. This is elementary. *Bourreson* v. *Evening Journal Co.*, 6 Am. St. Rep. 330, and cases in note. It is apparent that this is not cross-examination, yet the court permitted it, and went further and permitted cross-examination as to her arrest for abusing Ethel Crockett, several months after this occurrence which caused the libel. He went further and permitted cross-examination as to her treatment of this child Caroline Hansen, two years after the occurrence, which caused the libel; then defendant's counsel was permitted to go into a cross-examination as to her treatment of Ethel Crockett.

This was all the worst kind of error, *Spencely* v. *De-*

29

*Willott,* 7 East. 108 (Thayer 1186), yet a little later and the court permitted the defendant in sur-rebuttal to contradict Caroline Fenstermaker upon these points. But, for the present, we simply comment upon this manner of cross-examination. It is certain that it is not cross-examination in the first place. Next it is immaterial as to the particular charge made that Caroline Hanson was driven out on a particular day. Finally, the charge was that plaintiff assisted in driving her out, and what Caroline Fenstermaker did was immaterial. Instead of the court confining the evidence to the issue, he permitted the defendant to try not only the treatment of the child on this particular occasion, but also on occasions long after this, and in effect put Caroline Fenstermaker on trial for her treatment of other children.

### ERRORS IN SUR-REBUTTAL.

After incidentally trying the father of the child to ascertain how much affection he had for her, the trial proceeded with more incompetent evidence. Plaintiff had rested; defendant had put in its evidence to show the truth of the charge; then plaintiff had introduced his evidence in rebuttal. Thereupon, in sur-rebuttal, Ethel Crockett, who had been present in court, was produced as a witness and proceeded to give evidence as to what took place on the day the child ran away from home, the occurrence upon which the libel was founded. This evidence was objected to as not being now admissible, because admissible in chief on defendant's case, and because plaintiff's witnesses had been dismissed. It may be said that this matter was in the discretion of the court, but here is a case where that discretion was grossly abused by permitting the defendant to go on and reopen the whole case.

But after this witness, Ethel Crockett, had testified to the above, defendant in sur-rebuttal went on and asked her: "Did Mrs. Fenstermaker ever whip or beat you?" This was objected to as imcompetent, immaterial and irrelevant. It would have been incompetent in chief, trying to prove one charge by proof of another charge, and it could no more be evidence in sur-rebuttal. It was then argued that it was contradiction. Then the objection was made that it was seeking to contradict a witness upon a collateral point. On cross-examination, Caroline Fenstermaker, a witness for the plaintiff in rebuttal, had been asked if she had ever whipped or beaten this Ethel Crokett. This in itself was error, as we have shown above. But she answered that she had not whipped or beaten Ethel Crockett. Now then, on sur-rebuttal the court permitted defendant to go on and contradict Caroline Fenstermaker upon this point. Even if they had the right to cross-examine Caroline Fenstermaker thereon, they were bound by her answers.

The rule of law is that whatever shows a witness' bias or prejudice in the case is not collateral. Whatever tends to qualify or explain the witness' testimony given in chief is not collateral, but everything else that is not material to the issue is collateral. Now in this case, if Caroline Fenstermaker's acts were material at all to this case, it would be only such acts as showed her treatment of Caroline Hanson on the occasion she ran away. Her treatment of another child on other occasions could not be material to prove the truth of the charge. Hence, she could not be contradicted upon those points.

Sharswood, J., a great authority, said : "The test of whether a fact inquired of in cross-examination is collateral is this, would the cross-examining party be entitled to prove it as part of his case, tending to establish his plea? *Hildeburn* v. *Curran,* 65 Pa. St., 63.

The rule is well explained in the great English case of *Attorney-General* v. *Hitchcock,* 1 Ex. 91 (Thayer, 1217). *Stokes* v. *People,* 53 N. Y. 175 (Thayer, 1217).

It is recognized and laid down in two Utah cases: *Rogers* v. *Cook,* 8 Utah, 123. *People* v. *Hite,* 8 Utah, 461.

### ERRORS IN THE CHARGE.

The court instructed the jury, that the last paragraph of this libel was comment, proper and pertinent to the first part. We insist that it was not comment, but was in fact a new charge and directly asserted a criminal intent to kill the child. The court erred in instructing the jury that good motive, taken with other mitigating circumstances, might reduce the damages to a mere minimum. The true rule is that such evidence mitigates only exemplary damages, not actual damages. Odgers on Libel and Slander, p. 301; *Freese* v. *Tripp,* 70 Ill. 496.

Error No. 33 is based upon that part of the charge which charges the jury as matter of law that the libel does not charge plaintiff with the crime of abandonment and neglect of children. 2 Comp. Laws, §§ 4505-6.

It should be taken in connection with our sixteenth request (Abs. p. 56). The court ignores the proposition that it is not necessary that the charge should be technically accurate, but such that unlearned persons would infer such a charge. *Wilson* v. *McCrory,* 86 Ind. 170; *Rundell* v. *Butler,* 7 Barb. 260; *Kennedy* v. *Gifford,* 19 Wend. 296; *Drummond* v. *Leslie,* 5 Blackf. 453; *Belo* v. *Fuller,* 31 Am. St. Rep. 76; see 13 Am. and Eng. Enc. 347-8-9; Newell on Def. and Slan. 249.

It will be seen that the court nowhere defines any elements of damages, does not state what general damages are, does not show the difference between special and general damages nor between actual and exemplary damages. We objected to evidence as to good motives and lack of ex-

press malice, on the ground that it was irrelevant and immaterial, as well as incompetent. Plaintiff did not rely on actual malice, but only on implied malice. Malice in law as distinguished from malice in fact; hence, this evidence was inadmissible, because it could only go to the question of actual malice. *McAllister* v. *Detroit Free Press Co.*, 15 Am. St. Rep. 337, and note citing many authorities.

### CONCLUSION.

It will be seen in this case that a libel was published of and concerning a man of blameless character, who, although not shown to be concerned in any way with the act charged, was defeated in his action, by the fact that almost every question, except the matter at issue was litigated.

*Mr. O. W. Powers, Mr. D. N. Straup* and *Mr. Ogden Hiles,* for respondent.

A calm perusal of the brief filed by the learned counsel for plaintiff and appellant has raised in our minds, we regret to say, a suspicion that it was prepared in a spirit of anger which does not comport with a dispassionate discussion of legal principles in a court of last resort.

And upon the head of the district judge, who was so unfortunate as to have to try this case in the lower court, the vials of wrath are uncorked.

It is an instance where the losing party not only takes an appeal, but also exercises his constitutional privilege, and indulges in loud lamentations and deep objurgations about the court.

And this is done with rare eloquence, and it is fringed with such learned quotations that its animosity charms, and its departures from the case at bar are as unique as excursions into unknown realms.

The defamatory words must refer to some ascertained or ascertainable person, and that person must be the plaintiff. Odger's Libel and Slander, 127.

If the words used really contain no reflection on any particular individual, no averment or innuendo can make them defamatory. An innuendo cannot make the person certain who was uncertain before. *Miller* v. *Miller*, 8 Johns., N. Y. 74; Odgers on Libel and Slander, 127; *Sanderson* v. *Caldwell*, 45 N. Y. 398.

But, though the words used may at first sight appear only to apply to a class of individuals, and not to be specifically defamatory of any particular member of that class, still an action may be maintained by any one individual of that class who, by the necessary averments and proof, satisfies the jury that the words referred especially to himself. *Ryckman* v. *Lelevan*, 25 Wend. 186; *Ellis* v. *Kimball*, 16 Pick. 132.

There must be an averment in the statement of the claim that the words were published of the plaintiff and extraneous facts, showing that he is the person referred to, should also be averred. *Harvey* v. *Coffin*, 5 Blackf., Ind. 566.

It is proper to show under what circumstances an article is prepared and published. *Sullings* v. *Shakespeare*, 46 Mich. 408.

And the defendant may show that it really believed the matters published to be true and that it had good ground for such belief. *Kennedy* v. *Holborn*, 16 Wis. 457.

And testimony is proper in mitigation though it tends to prove justification and falls short. *West* v. *Walker*, 2 Swan. Tenn. 32; *Sprall* v. *Smiley*, 9 Cal. 329. See also *Farr* v. *Rasco*, 9 Mich. 356; *Bush* v. *Prosser*, 11 N. Y. 349–357.

Similar testimony to that objected to in this case has been held competent even where the common law system

of pleading to a great extent prevails. *People* v. *Detroit Post and Tribune,* 54 Mich. 464.

The charges in the complaint were traversed by the allegation in justification. The charge made in the article being specific the answer was very properly general. "Where the charge is specific, a general averment of its truth is sufficient." *Van Wyck* v. *Guthrie,* 4 Duer, N. Y. 268; *Cooper* v. *Greeley,* 1 Denio, 347; *Weaver* v. *Loyd,* 4 D, & B. 230; *Kelly* v. *Taintor,* 48 How. Pr. 270.

Counsel contend that evidence admissible in justification is not admissible in mitigation. They are clearly wrong. The Code by authorizing the defendant to couple the defense in mitigation with a justification in its answer, enables the defendant to take advantage of either one or the other, according to the case made out in proof. *Bisbey* v. *Shaw,* 12 N. Y. 73; *West* v. *Walker,* 2 Swan Tenn. 32; *Sprall* v. *Smiley,* 9 Cal. 329.

But the plaintiff complains that the court erred in charging the jury that the article published did not charge the crime of abandonment of children. This was correct. 2 Comp. Laws 1888, §§ 4505–6.

Clearly this charge was not made in substance or effect in the article published, and as an innuendo cannot introduce new matter, or enlarge the natural meaning of words, and, as it cannot supply the place of the colloquium. but must be supported by the colloquium, it was the duty of the court to charge as it did. *Emery* v. *Prescott,* 54 Me. 389; *Bradley* v. *Cramer,* 59 Wis. 309, 48 Am. Rep. 511; *Steitzell* v. *Reynolds,* 59 Pa. St. 488; *Clarke* v. *Fitch,* 41 Cal. 473.

The charge of the court was too favorable to the plaintiff.

The court charged the jury that the article complained of was not privileged. This, we think, was too favorable to the plaintiff.

It is the law that on all matters of public interest and,

concern every one has a right to make such comments and criticisms as he pleases, provided he does so fairly and with an honest purpose.    *Wason* v. *Walter*, L. R. 4 Q. B. 93; 3 Lawson's Rights and Remedies, 2181.

All matters which, even for a short time, claim the attention of the people and the public press are matters of public interest.    3 Lawson's Rights and Remedies 2183.

KING, J.:

This is an action for damages, founded upon the publication of an alleged defamatory article.    Plaintiff alleges that he resides upon a ranch known as the "Box Elder Ranch," and is the head of the family of Fenstermaker, residing thereon, and that defendant published in its daily and weekly newspapers (which he alleges were extensively circulated), of and concerning him, the following false and defamatory matter:

"Fiend-like Act to a Child—A Little Child Turned Out into the Desert to Die—Her Rescue.    One of the worst cases of cruelty ever heard of in this section of the country comes from the county of Box Elder, and the facts, as stated, are enough to make the blood of an average man boil with indignation.    Last summer a little girl named Caroline Hansen came here from Sweden with her grandparents.    They went to live at Cottonwood, and continued to reside there until the old people died.    The little girl then went to live with a family named Reddan, who reside in the Ninth ward, this city.    After staying there a short time, the folks tired of her, and she was sent to a family named Fenstermaker [meaning the family composed of the plaintiff and others], at Box Elder ranch, where she lived until the 24th of this month, when she was told to get out and go somewhere,—they did not care where,— and never come back again.    They told her at the time that she must not go near the sheep herders, or they

would kill her, and with this fear in her heart the poor child started out to try and find another home. After wandering about the desert for two days and two nights, sleeping in the sagebrush, she was found by one of the sheep herders, and when discovered she begged piteously for her life, thinking that she was in danger of being killed.

"The herder, whose name is J. R. Murdock, had a hard time trying to quiet her, and when he finally did he took her to his cabin, and ministered to her wants. She was thoroughly exhausted and nearly starved, and it was no small task to get her back to a condition where it would be safe to give her all she wanted to eat and drink. * * * Yesterday he started for Tooele, and there he will swear out a complaint against the people who have treated her so brutally, and will see to it that they are brought to the justice that they so fully deserve. The case is actually one of the most heartless of its kind on record, and the people that would be guilty of such a deed must be very bad indeed. The matter of sending her away was bad enough, God knows, but their action in telling the child that she must not appeal to any one—for that is what their warning amounted to—is absolutely fiendish. It would seem that they wanted her to go out and starve to death, and that they planned to that end. When found, the little girl was in an emaciated condition, and had had nothing to eat for nearly three days, and was almost famished for water. The Fenstermakers live at what is called 'Box Elder Ranch,' which is about ten miles from Grantsville, in the county of Box Elder. The inhuman people will have a chance to answer in the courts for the deed, and it is hoped they will be made to suffer for their actions,"

One of the innuendoes stated that the article charged that plaintiff and other members of his family had been guilty of the crime of abandonment and neglect of children.

The answer admits the publication, but denies that it was false, malicious, defamatory, or libelous. Upon the trial it alleges that the matter set out and alleged to have been published of and concerning plaintiff was in every respect substantially true, and was not made with any intent to injure plaintiff, or any other person. It denied that it conveyed, or was intended to convey, the meaning that plaintiff or other members of his family had been guilty of the crime of abandonment and neglect of children, or any crime whatever. The amended answer alleged that the charge and supposed defamatory words in the article complained of, and each and all of them, were true; that the child, Caroline Hansen, nentioned in the article complained of, came from Sweden, and resided for a time in Salt Lake City, and was afterwards taken into the Fenstermaker family; that at about the time mentioned in the article she was found by J. R. Murdock, a sheep man, wandering in the desert; that she begged of him to spare her life, thinking she was in danger of being killed; that she informed Murdock that the persons with whom she had lived had told her to leave their house and go somewhere,—they did not care where,—and never return, and that she must not go near the sheep herders, or they would kill her, and that she averred that she had wandered in the desert for two days and nights; that Murdock took her to his cabin; * * * that it was the intention of Murdock to swear out a complaint against the people who had so treated the child, and bring them to justice. " Defendant avers that the last paragraph of the article complained of was pertinent and proper comment, based upon the facts set forth in said article. * * * And defendant hereby pleads the foregoing in mitigation, as well as in justification, of the said libel." There are more than 40 assignments of error, but it is unnecessary for us to consider all of them, for the reason that the few discussed

herein convince us that the judgment of the lower court must be reversed.

Respondent contends that plaintiff failed to make out a case, and therefore, if error were committed, he cannot complain. In support of this position, it is argued that the article upon which the action was founded did not refer to an individual, but to a class. It seems that, after plaintiff had called his first witness to the stand, defendant objected to any testimony being introduced, for the reason that the complaint did not state a cause of action, as the article sued on did not refer to an individual, but to a class. During the discussion that followed, plaintiff's counsel stated that the innuendoes in the complaint which pointed the alleged defamatory words to plaintiff might be stricken out as surplusage. Whether this was done or not the record fails to disclose; but the respondent proceeds upon the assumption that they were eliminated from the complaint, and therefore it is urged there were no averments of facts, by way of innuendo, connecting the publication with the plaintiff. In answer to this it is argued that defendant's answer, by failing to deny that the publication was of and concerning the plaintiff, is to be treated as an admission that the plaintiff is the person against whom it was directed, and that such admission dispenses with the necessity of averments or proof connecting plaintiff with the alleged defamatory matter.

Respondent's counsel insist that the answer does contain a denial of this averment. But it is clear that they are mistaken. The answer simply denies that the publication was false or malicious, or that defendant published any false or defamatory matter of or concerning plaintiff, but there is no denial of the allegation that the article in question was published of and concerning the plaintiff. The important allegation to be denied, if a denial could

be made, was that which imputed in the matter published the direct charge against plaintiff. Defendant having failed to make such denial, it was wholly immaterial whether the innuendoes in the complaint remained or not. The answer fastened the article upon the plaintiff, and obviated the necessity of any proof being offered connecting him with it, and severing him from any class. Section 3246 of the Compiled Laws provides that in an action of this character " it is sufficient to state generally that the article complained of was published concerning the plaintiff, and if such allegation be controverted the plaintiff must establish on trial that it was so published or spoken."

Of course, to be actionable, the defamatory article must refer to some ascertained or ascertainable person, and no innuendo can make the words defamatory unless they reflect upon some individual, as such, or a class, in certain instances. Where the words used seem to apply only to a class of individuals, and not to be specially defamatory of any particular member of that class, still the action can be maintained by any individual of that class who can satisfy the jury that the words referred especially to himself. If the publication had charged that the people of Tooele county were guilty of the reprehensible—not to say criminal—conduct charged to the Fenstermaker family, the class so charged would be so extensive, the impossibility of fixing individual responsibility so apparent, that the court would pronounce the article not actionable; but where the words, by any reasonable application, impute a charge to several individuals, under some general description or general name, either one coming within such description may successfully maintain an action, if the jury determine that the words have a personal application to the person bringing suit. *Ryckman* v. *Delevan*, 25 Wend. 186; *Ellis* v. *Kimball*, 16 Pick. 132; *Smart* v. *Blanchard*, 42 N. H. 137; *Dwyer* v. *Journal Co.*, 11

Daly, 250. Plaintiff also alleged that he was the head of the Fenstermaker family. This was not denied. We think the publication concerned such a class that any member thereof could maintain an action, on the principles laid down; and in this case the plaintiff having averred that he was the head of this class, and that the publication was of and concerning him, no proof in support of these allegations was necessary, under the admissions in the answer.

Appellant assigns as error the action of the court in permitting defendant to offer evidence tending to prove the truth of the charge contained in the publication, and the refusal of the court to give plaintiff's requests upon the question of justification. This presents the question, does the amended answer constitute a proper plea of justification? At common law, under the plea of general issue, in this class of cases, the defendant could give evidence tending to prove the extrinsic facts stated in the inducement, the publication of the alledged defamatory matter, the truth of the colloquium, or the application of the words to plaintiff, as well as certain other things, but evidence in support of the truth of the charge could only be given under a plea of justification. But interposition of this plea was attended with great danger to defendant, for the attempt to prove the truth of a libel was regarded as the reiteration of the charge, and conclusive evidence of malice, and no evidence in mitigation could be received. If defendant failed to establish the truth of the charge, the damages were aggravated. If he desired to mitigate, he was compelled to admit the truth of the charge, and could offer no evidence *dehors* it. Under the plea of mitigation, he could only introduce evidence tending to show that he had reason to believe the charge true when made.

Our Code has removed the perils attending these pleas,

and has established a more liberal rule. A defendant may deny generally or specifically the material allegations of the complaint to be by him controverted, and simultaneously plead the truth of the matter charged as defamatory, and any mitigating circumstances to reduce the amount of damages; and, whether he prove the justification or not, he may give in evidence the mitigating circumstance. Under this provision, defendant can plead both justification and mitigation, or either; and, while the Code seems to contemplate that each plea should be separately stated, we are not prepared to say that they may not be joined, if the answer clearly indicates that the facts and circumstances so pleaded are tendered both by way of justification and in mitigation. The adoption of the Code, however, does not abrogate the rule that justification must be specially pleaded, and the particular facts averring the truth of the imputation, whether it be general or special, must be clearly set forth. The justification must fully meet the charge, aver the facts showing it to be true, and present them in a traversable form. It must also meet the points in the sense imputed to them in the innuendo. *Wachter* v. *Quenzer,* 29 N. Y. 547; *Bush* v. *Prosser,* 11 N. Y. 347; *Willover* v. *Hill,* 72 N. Y. 36; *Spooner* v. *Keeler,* 51 N. Y. 527; *Robinson* v. *Hatch,* 55 How. Prac. 55; Newell, Defam. pp. 550, 653. It is clear that the averments in the answer reciting the finding of the child, her statements to Murdock, etc., utterly fail as a plea of justification. They nowhere meet the charge imputed to plaintiff.

Is it a sufficient plea of justification to allege that the charge and supposed defamatory words are true? Appellant insists that this is not sufficient, because it fails to state the facts issuably. Respondent contends that the charge is specific, and therefore, the general averment of its truth satisfies the rule. We have experienced considerable difficulty in answering this objection, and have reached

a conclusion only after a patient examination of many authorities. "Where the imputation complained of is a conclusion or inference from certain facts, the plea of justification must aver the existence of a state of facts which will warrant the inference of the charge." Newell, Defem. p. 652; *Hathorn* v. *Spring Co.*, 44 Hun, 608; *Tilson* v. *Clarke*, 45 Barb. 178; *Downey* v. *Dillon*, 52 Ind. 442; *Bissell* v. *Cornell*, 24 Wend. 354; *Thrall* v. *Smiley*, 9 Cal. 529; *Van Ness* v. *Hamilton*, 19 Johns. 349. It is true the plea ought to be certain to a common intent, at least, and direct and positive in the facts set forth; but we think there is a difference between the charge imputed in the article complained of, where specific acts are alleged, and a case in which a person is charged, for instance, with being a swindler or common cheat. In such case the plea of justification should state specifically the facts constituting the offense, and the instances when such person was guilty of swindling, together with the *animo furandi*. Is the charge in the alleged libelous article general? If the publication be construed as charging plaintiff with the statutory crime of abandonment and neglect of children, as alleged in plaintiff's complaint, then the imputation would be general.

Without taking the trouble to examine in detail this question, we are clear that such crime is not charged. When the imputation is a charge of some specific act or acts, it is sufficient if the plea allege, in legal language, that the charge is true. The gist of the imputation in the article complained of, construed in the light of the admissions in the answer, is that plaintiff, tiring of the little girl, turned her out into the desert, under such circumstances and with such commands as would result in her death. The article further charges that plaintiff treated her brutally, and planned that she might starve to death. It is clear that these latter charges are general, and unless so inseparably connected with preceding specific

acts, particularly described and so unmistakably interpreted by them as to relieve them of generality and stamp them with definiteness, the answer could not plead a justification. We think these charges, viz., of brutality, and planning for the death of the little girl, though general and conclusions, are substantially a reiteration of the specific charges previously made in the article complained of. It is to be noted, too, that the plaintiff never demurred or interposed any motion with reference to these pleas interposed by defendant. Under all the circumstances, we are constrained to hold that the answer contained a plea of justification. *Van Wyck* v. *Guthrie,* 4 Duer, 47; *Cooper* v. *Greeley,* 1 Denio, 347; *Weaver* v. *Lloyd,* 4 Dowl. & R. 230; *Kelly* v. *Tuintor,* 48 How. Prac. 270; Odgers, Sland. (Bigelow's ed.) p. 485.

Appellant next contends that the court erred in permitting evidence to go to the jury in mitigation of damages—First, because, as claimed, there was no plea of justification, and for the further reason that the evidence tended to prove justification, and was therefore improper in mitigation; and, second, because the evidence so introduced was not pleaded either in justification or mitigation. Undoubtedly, it was formerly the rule that evidence in mitigation could only be given when the defendant admitted the charge to be false, and, if any was offered which tended in any manner to prove the truth of the charge, it was inadmissable. *Fero* v. *Ruscoe,* 4 N. Y. 162; *Cooper* v. *Barber,* 24 Wend. 105; *Petrie* v. *Rose,* 5 Watts & S. 364. But, as stated above, our statute has abrogated this rule. *Bush* v. *Prosser,* 11 N. Y. 349; *Thrall* v. *Smiley,* 9 Cal. 529. Notwithstanding the statute, the facts relied on in mitigation must be specifically set forth in the answer. *Willover* v. *Hill, supra; Halley* v. *Gregg* (Iowa), 48 N. W. 974; *Mielenz* v. *Quasdorf,* 68 Iowa, 726, 28 N. W. 41. The provision that the answer may allege

both the truth of the matter charged as defamatory and in mitigation does not mean that it may be alleged in general terms, without any statement of facts or particular circumstances. The requirement that the answer should set up the matter to be relied on was intended to prevent surprise, by informing the plaintiff of what he must expect to meet. *Wachter* v. *Quenzer, supra; Spooner* v. *Keeler,* 51 N. Y. 527.

P. H. Lannan, president and manager of the defendant, was called by it as a witness, and testified that one Gilson furnished him the information upon which the article in question was based, and that he communicated it to the reporter of the paper, by whom the article was then written. The witness further stated that he believed the information to be true. Plaintiff objected to this evidence; alleging there was no proper plea of mitigation, and that the article did not purport to be made on the statement of another. We think both objections were well taken. Under the plea of justification, it could not be received, as it was hearsay; but it would be competent in mitigation, if properly pleaded. The mitigating circumstances particularized in the answer are that the girl, Caroline Hansen, was found by one Murdock, etc., to whom she made certain statements. There is no averment in the answer of any communication to defendant of these circumstances, either by Caroline Hansen, Murdock, or Gilson. In actions of this character the defendant may set forth in answer, and prove on trial, facts and circumstances tending to establish the truth of the defamatory matter, by way of mitigating, with a view to disprove malice; but, to be available to him in mitigation, it must be made to appear that he knew or had information of these facts or circumstances when the publication was made, and that he proceeded under the *bona fide* belief of the truth of the

matter so published; and such facts and circumstances must be specifically alleged in the answer.   3 Suth. Dam. p. 630; *Hatfield* v. *Lasher*, 57 How. Prac. 260; *Dolevin* v. *Wilder*, 7 Rob. (N. Y.) 319; *Gorton* v. *Keeler*, 51 Barb. 475; *Willover* v. *Hill*, *supra*.

In order to make the evidence of this witness competent, the answer must allege that, prior to the publication, defendant received the information contained in the article, and from such sources as induced an honest belief in its truth.   Plaintiff is entitled to know the character of the proof to be offered, either in justification or in mitigation, and the answer must specifically point it out. This testimony was also incompetent because the article did not state the sources of information.   The rule is that evidence to show that defendant did not originate the libel is inadmissible in mitigation of damages, and, in contemplation of law, the repeater of a libel is equally culpable as the author.   But to this rule there is an exception.   "If defendant, in repeating the story as it reached him, gives it as hearsay, and states the sources of his information, then, but only then, is the fact that he did not originate the falsehood, but has only repeated it, allowed to tell in his favor, as tending to prove that he bore the plaintiff no malice.   When the libel does not on its face purport to have been derived from some other source, but is stated as derived from the writer's own knowledge, evidence is inadmissible to show that it was communicated to defendant, or copied from some other paper."   Odgers, Sland. p. 302; Newell, Defam. 874; *Peterson* v. *Morgan*, 116 Mass. 350; *Talbutt* v. *Clark*, 2 Moody & R. 312; *Marker* v. *Dunn*, 68 Iowa, 720, 28 N. W. 38; *Morey* v. *Association* (Sup.), 1 N. Y. Supp. 475; *Huffer* v. *Miller* (Md.), 22 Atl. 205.

It is also insisted that the court erred in admitting the

testimony of Gilson, Murdock, and Wilder.   Their testimony was, substantially, that after the little girl was found in the desert she told them that they (referring to plaintiff and his family) had told her to leave and never come back, and not go near sheep herders, or they would kill her. Gilson also testified to having informed the manager of defendant of these conversations, and the physical condition of the little girl when found.   If this evidence was admitted in support of the plea of justification, it was error.   Evidence of statements made by Caroline Hansen, not in the presence of plaintiff, was hearsay.   Her statements to this witness were a narration of past events, and therefore not a part of the *res gestæ*.   The test to determine whether this testimony was hearsay or not is:   If plaintiff was being prosecuted for turning the girl into the desert, and forbidding her to seek relief from shepherds, could her statements made to third parties, not in plaintiff's presence, be given in evidence?   It is so elementary as not to need citation that even the girl could not testify, in such a case, as to what she told these witnesses.   Neither at the time this evidence was admitted, nor in the court's charge, was it limited to the plea of mitigation.   But, conceding that it was received solely to disprove malice, we think, under the pleadings, its admission was erroneous, because, as above stated, the answer failed to recite the facts and circumstances concerning which this witness testified, and the communication by them to defendant. Such testimony was calculated to be highly prejudicial to plaintiff, and was only competent under a proper plea of mitigation, when coupled with cautionary instructions from the court that it was received only to disprove malice, but not in support of the plea of justification.   If defendant had averred in its answer that it had been informed by Gilson that he had met the girl, and had set out the conversation ensuing between them, and Gilson's statement to

Lannan, and all the circumstances which induced in the latter's mind a belief in the truth of the charge, and that he believed the statements to be true, Gilson's testimony would have been competent under the plea of mitigation.

Plaintiff further claims that the court erred in permitting counsel to cross-examine Mrs. Fenstermaker in rebuttal. She was called by plaintiff, and testified that, while Caroline Hansen resided at her husband's home, she was in the habit of running away, and that upon the occasion mentioned in the publication, without cause, she clandestinely departed, and, though diligent search was made, could not be found. She also testified to her affectionate regard for the child. On cross-examination defendant's counsel was permitted to question her at great length concerning other children whom she had taken to rear, with a view of showing that she had treated them with great cruelty. Among the questions asked were these: "*Q.* In June, 1891,—the same year that Caroline Hansen ran away,—you were arrested for abusing Ida Crockett, were you not? *Q.* Weren't you taken before Justice Williams, at Grantsville, and tried upon the charge of abusing the girl Ethel Crockett? *Q.* Did you whip this girl, Caroline Hansen? *Q.* Did you whip her with sticks of wood? *Q.* Did you whip her with a stove lifter? *Q.* In presence of Mary Grice, upon her return [speaking of Ethel Crockett], didn't you hit her in the head with a stick of wood?"

In answer to plaintiff's objections to these questions, and a great many others of like character (the objections being based upon the grounds of irrelevancy, immateriality, and that they were collateral to the issues involved), defendant's counsel stated that they desired to show "that plaintiff's wife was constently obtaining orphan children, and that she abused them and drove them away and that such cross-examination was proper to show her treat-

ment of children,—her general character." The issue presented by the pleadings was as to whether Amos Fenstermaker had driven Caroline Hansen from home into the desert and planned for her death. If plaintiff had been on trial for inhuman treatment of Caroline Hansen, it would not have been competent to prove that at different times his conduct toward some other child had been cruel. If proof of plaintiff's cruel treatment of others would not be admissble, upon what theory can it be claimed this testimony was relevant or proper? Mrs. Fenstermaker was not plaintiff. Her conduct towards Caroline Hansen was foreign to the issues of the case, except where it is shown to be so closely connected with the husband, by reason of proximity, directions, etc., as to charge him with being a participant. These questions called for answers upon immaterial and collateral matters. It is true that whatever shows the bias or prejudice of witnesses concerning the matter on trial, or tends to qualify or explain such testimony given in chief, is not collateral, but everything else not material is collateral. Her treatment of other children on other occasions would not tend in the remotest degree to prove or dispove the truth of the charge, hence would be immaterial, and upon a collateral matter.

The test of whether the fact inquired of in cross-examination is collateral is this: "Would the party be entitled to prove it as a part of his case generally to establish his plea?" *Hildeburn* v. *Curran*, 65 Pa. St. 63; *Stokes* v. *People*, 53 N. Y. 175; *Attorney General* v. *Hitchcock*, 1 Exch. 91; Thayer, Cas. Ev. 1217. To prove that she was arraigned before the magistrate, charged with ill treatment of Ethel Crockett, offers no explanation of her husband's treatment of Caroline Hansen. There is only one ground upon which this cross-examination is permissible,—for the purpose of testing the recollection and credibility of the witness. Mr. Thompson states the rule

that "such inquiry may be permitted by the court, in the exercise of a sound discretion." 1 Thomp. Trials, § 461; Spenceley v. De Willott, 7 East, 108; Thayer, Cas. Ev. 1186. He also states that all courts are agreed that a witness cannot be cross-examined as to independent, collateral facts, for the mere purpose of impeaching him by contradiction. "For the purpose of enabling the jury to weigh the testimony of a witness in a proper light, they must know somewhat of his opportunities, and are entitled to know something of his moral worth, as evidenced by his conduct; and, to this end, courts should permit a reasonable cross-examination of witnesses." Whether there was an abuse of this discretion is not necessary to determine, but we are satisfied the testimony was improperly admitted, when placed upon the ground stated by counsel. "The general reputation of Mrs. Fenstermaker for treatment of children" was not in issue; and, if it had been, there is no principle of law which permits extraneous, specific charges to be inquired into for the purpose of establishing general reputation. Haddock v. Naughton (Sup.), 26 N. Y. Supp. 455.

The record seems to indicate that these questions were put merely with a view to impeaching the witness by contradiction. Where it becomes apparent to the court that this is the obvious purpose of counsel, further cross-examination of the same character ought to be denied; and if the questions are of such a nature, and are pregnant with meaning, and suggestive of inferences which would be prejudicial, such cross-examination might be so continued as to render its admission error. The purpose for which these questions were propounded seems clear from subsequent proceedings. In surrebuttal, defendant called Ethel Crockett, Justice Williams, and other witnesses, to contradict Mrs. Fenstermaker. They were permitted, over plaintiff's objection, to testify, and denied the answers of plaintiff's wife above stated, and others of

like import propounded to her. The authorities are unanimous in holding this to be error. In cross-examining upon immaterial and collateral matters, the cross-examining party makes the witness his own, in respect of such matters as contradict the testimony given. *Leavitt* v. *Stansell*, 44 Mich. 422, 6 N. W. 855; *People* v. *McKellar*, 53 Cal. 65. This court, in *People* v. *Hite*, 8 Utah, 475, 33 Pac. 254, said: "If a witness has been charged with a crime, or arrested or indicted for it, he may be asked about it on cross-examination; and, when such facts are irrelevant to the matter in issue, the party putting the questions is bound by the answers of the witnesses. He cannot call other witnesses, and prove that the answers are false."

Baron Alderson, in a leading case, says: "I am not aware that you can with propriety permit a witness to be examined first, and contradicted afterwards, on a point which is merely and purely collateral; as, for instance, as to his personal character, and as to his having committed any particular act. The inadmissibility of such a contradiction depends upon another principle altogether. \* \* \* The reason why the party is obliged to take the answer of a witness is that, if he were permitted to go into it, it is only justice to allow the witness to call other evidence in support of the testimony he has given, and, as those witnesses might be cross-examined as to their conduct, such a course would be productive of endless collateral issues. \* \* \* Then, in the next place, in my opinion, when the question is not relevant, strictly speaking, to the issue, but tending to contradict the witnesses, his answer must be taken,—although it tends to show that he is, in that particular instance, speaking falsely, and although it is not altogether immaterial to the matter in issue,—for the sake of general public convenience; for great inconvenience would follow from a continual course of these sorts of cross-examinations which

would be let in in the case of a witness being called for the purpose of contradiction. *Attorney General* v. *Hitchcock, supra.* While, perhaps, the same results might be reached by the court or jury if improper evidence were admitted, or proper evidence excluded, still a strict adherence to well-established rules of evidence is essential, or our courts and systems of jurisprudence will be regarded as delusions and snares. "The rules of evidence are founded in the charities of religion, in the philosophy of nature, in the truths of history, and in the experience of human life." And any departure from them can only be attended by evils immeasurable in their consequences.

Appellant next complains that the court erred in announcing the rule of damages. The jury were instructed that "the liberty of the press does not include immunity for publishing false and defamatory statements of any persons, and the fact, if it be a fact, shown by the evidence, that the defendant in a suit for libel published a libelous article in good faith, as a matter of news, without actual malice, against the plaintiff, is no defense to the action; but such fact should be considered in mitigation of damages, and it, with other mitigating circumstances, may be sufficient to reduce the damages to a mere minimum." The last part of this instruction plaintiff contends is erroneous, especially when construed with the further statement by the court that "it is not the policy and spirit of the law to unnecessarily or arbitrarily abridge the freedom of the press, but the law recognizes the press as a potent factor in society for good ; and it is proper for you to bear this in mind, in determining the question of damages in this case, if you find in favor of the plaintiff." The court gave no rule by which to determine the measure of damages, although plaintiff submitted a request embodying the proper rule for the guidance of the jury.

We do not think these instructions announce the correct

rule of damages. Plaintiff did not seek punitive damages, but relied upon implied malice only. While it is clear from the evidence that plaintiff was not entitled to exemplary damages, it is equally clear that the jury should have been instructed that, if they found for the plaintiff, then he was entitled to actual and substantial damages. The charge of the court was equivalent to a declaration that if the article was published in good faith, without actual malice, no matter what injury plaintiff had suffered, and no matter what damages the jury might find he had sustained, the law would uphold them in returning for the least possible amount.. This cannot be the law. If the publication was false, malice is presumed, and plaintiff was entitled to actual damages resulting therefrom, regardless of the motives influencing the publication; and the instructions to the jury that the press is recognized by the law as a potent factor in society for good, and that it was proper for the jury to bear that in mind in determining the question of damages, was calculated to mislead the jury. The jury might be easily led to believe from this that newspapers possessed immunity for defamatory publications, because they were potential factors in society for good and that the good accomplished should be regarded as an adequate compensation for wrongs done to individuals. The law accords the press no greater recognition as a factor in the growth of civilization than is accorded many other things. The law, as a judicial system, does not recognize the press either as a puerile or a powerful factor in society. It accepts it as a part of our civilization, and treats it as it treats other features—abstract and concrete—as they come within its jurisdiction.

Appellant insists that, inasmuch as exemplary damages were not demanded, no evidence in mitigation was admissible, because, if plaintiff was entitled to recover, the law

must clearly award him actual damages.   It is a rule frequently announced that such evidence is only receivable to reduce exemplary damages, but in slander and libel cases the authorities seem to hold that evidence in mitigation is always permissible, when properly pleaded.   To the writer of this opinion this rule seems illogical.   When a plaintiff seeks only actual damages for a defamatory publication, and offers no evidence whatever tending to prove express malice, why should the damages actually sustained be reduced by evidence in mitigation?   If a wrong is done, and the aggrieved party seeks compensation only for that wrong, upon what principle of justice ought he to be deprived of a part of the monetary compensation because the party committing the wrong acted in good faith?   If evidence to aggravate the damages can be offered by plaintiff, and he refrains from offering such evidence, and contents himself with a demand for actual damages, there can be no good reason, it would seem, why the defendant can reduce those damages by offering evidence of his good faith.   However, the rule seems to be firmly established as above stated, and we do not feel warranted in asserting a different one.

The court further instructed the jury that "the general character of the plaintiff's family at the time the alleged libel was published is at issue, and it is proper for it to be considered by the jury, because such character is the foundation of the plaintiff's claim for damages." Defendant offered no direct evidence connecting plaintiff with any cruel treatment of Caroline Hansen, and in no manner attempted to impeach his character.   So far as the record discloses, he possesses an unblemished reputation. Defendant offered evidence tending to prove that some of his relatives and members of his household had unsavory reputations.   We do not think their reputations were in-

volved in this case.    We do not think that because some members of a family lead improper lives, and are held in ill-repute by the public, that one who, by an honest and upright life, has established a spotless reputation, should suffer because of others' misdeeds, and when slandered or libeled, and redress is sought, be met at the threshold of the trial with the sins of his family, and be told that before he can prevail his righteousness must cover their enormities.    That seems to be carrying the doctrine of vicarious atonement too far.    The Mosaic law visited the sins of the father upon the children to the third and fourth generation; but this goes further, and, in a measure, attaches responsibility to a person for the misdeeds of his entire family, be it large or small.    We think this instruction was error.    The plaintiff's reputation was in issue, not the family's.    If he was libeled, he was entitled to recover, and their vices were not to be visited upon his head.

Numerous other errors are assigned, but we content ourselves with reference to the foregoing.    The judgment of the lower court is reversed, and the case remanded, with instructions to grant a new trial.

MERRITT, C. J.:

I concur in the judgment of reversal in this case.