CARUTH, *Appellant,* v. RICHESON *et al.*

1. **Libel:** APPLICATION OF DEFAMATORY MATTER: PLEADING. AND PROOF.  It is not necessary under the statute, in an action for libel, to plead extrinsic facts showing the application of the defamatory matter to the plaintiff, but it is necessary to aver and to prove that it was published concerning him.

2. ——— : ——— : QUESTION OF FACT.  If the defamatory matter points to no person in particular, it then becomes a question of fact whether it does or does not apply to plaintiff.

3. ——— : ———.  Where the defamatory language is ambiguous and it is doubtful in what sense the publisher intended it, the question presented is in what sense the hearers understood it.

4. **Supreme Court:** VERDICT.  The supreme court will not interfere with a verdict on the ground that it is against the evidence unless it satisfactorily appears that the verdict was the result of corruption, prejudice or passion.

*Appeal from St. Louis City Circuit Court.*—HON. A. M. THAYER, Judge.

AFFIRMED.

*Martin, Laughlin & Kern* for appellant.

The plaintiff was entitled to a verdict upon the pleadings and evidence. The verdict against him should have been set aside as against the evidence and the law as declared by the court. *Lionberger v. Pohlman*, 16 Mo. App. 392; *Whitsett v. Ranson*, 79 Mo. 258; *Spohn v. Railroad*, 87 Mo. 74; *Garrett v. Greenwell*, 92 Mo. 120.

*Hitchcock, Madill &'Finkelnburg* for respondents.

(1) Whether the matter complained of in the petition as libelous was (as therein also alleged) published by defendants of and concerning the plaintiff Caruth, was a material issue of fact under the pleadings, to be determined by the jury; and the burden of proof was on plaintiff to satisfy the jury that the alleged libel did apply and was understood by others to apply to him. Town. on Slan. and Lib. (3 Ed.) secs. 131, 343; Odgers on Lib. and Slan. 118, 127, 540–541; *McLaughlin v. Bascome*, 38 Iowa, 660. (2) It was for the jury alone to determine, under all the circumstances, whether the words complained of were published "of and concerning the plaintiff;" and the finding of the jury on that issue is final. Town. on Slander (3 Ed.) sec. 281; Odgers on Libel, 65, 127–128; *Sanderson v. Caldwell*, 45 N. Y. 401. *A fortiori* this court will not review the action of the trial court, on the evidence before it, in refusing to disturb that finding. *Whitsett v. Ransom*, 79 Mo. 258; *Type Foundry v. McCann*, 68 Mo. 195; *Doering v. Saum*, 56 Mo. 479. (3) The wrong and injury of a libel depend altogether on the effect of the words thereof on third persons: for "the slander and damage consist in the apprehension of the hearers." The verdict was well warranted by the evidence. Townshend on Slander, secs. 131, 133, 139, 140, 384; Odgers on Libel,

128, 129; *McLaughlin v. Bascom*, 38 Iowa, 660; *Read v. Ambridge*, 6 Carr. & P. 308; *Hankinson v. Bilby*, 16 Mees. & W. 442; *Hawks v. Patton*, 18 Ga. 52.

BLACK, J.—Plaintiff sued for fifty thousand dollars damages in an action of libel; and appealed from a judgment in favor of defendants.

The defendants, twelve in number, were sworn as grand jurors at the October term 1883 of the St. Louis criminal court. The judge in his charge, among other things, read to them a report made by the grand jury at the previous July term, in which it is stated that there existed in St. Louis a well-organized "ring" in the interest of professional gamblers and lottery dealers; and they were instructed to give the matter a thorough investigation. The grand jurors made their final report in writing signed by all of them, which was read by the judge, filed by the clerk, and contains these words, of which complaint is made: "A corrupt combination of unprincipled and notorious persons, and certain persons holding offices of the state under appointment of the governor, has, for a considerable time, existed for the purpose of unlawfully controlling and using the police force of this city in the promotion and continuance of gambling and lotteries, and for other unlawful purposes. The members of this combination, outside of those belonging to the police board, have possessed and exercised such an influence upon its members belonging to the board that they have, in many important instances, dictated and controlled the policy of the board. These commissioners, subject to the corrupt influences and power, have latterly constituted a majority of the board, and by either willing or forced submission to the commands and behests of the combination have done, or permitted to be done, acts which must have been contrary to their honest and upright judgment. The late chief of police, removed from his office without apparent cause, has been solicited by members of this combination to permit the maintenance of fraudulent schemes

and practices in open and direct violation of law. He has been commanded to bestow upon individuals, against his active remonstrance, privileges which rightly belong to none. He has been compelled to proceed from one house of prostitution to another and assure the inmates that they would not be interfered with in their evil and unlawful business. Members of the police force have been suspended or removed at the suggestion or request of the corrupt combination, irrespective of any consideration as to their efficiency; and worthless and inefficient officers have by the same powers been retained. The officers and members of the force, through like immoral and unlawful influences, have been hampered and restricted in the honest and faithful performance of their duty.''

The defendants plead by way of a general denial only. The board of police commissioners is composed of five persons, four of whom are appointed by the governor, the mayor of the city is, *ex-officio*, the fifth. Plaintiff was and for about two years had been a member of the board, holding his office by appointment of the governor.

Error is assigned to the action of the court in giving instructions to the jury, but the record does not show that any objections were made or exceptions saved. The refused instructions, asked by the plaintiff, are not found in the record. For these reasons we cannot review the rulings of the court relating to the giving and refusing to give instructions.

The jury returned the following verdict: ''We the jury, in the case, etc., find for defendants, sufficient proof not having been furnished that said Caruth was meant in the publication uttered by defendants.'' This verdict, it is contended, is against the evidence, and should have been set aside, and this presents really the only question in the case. Under our statute, in these actions of libel, it is not necessary to plead extrinsic facts to show the application to the plaintiff of the

defamatory matter; but it is necessary to allege and to prove that it was published concerning the plaintiff. The law, too, is well settled that if the defamatory matter points to no person in particular, it then becomes a question of fact whether it does or does not apply to the plaintiff. Even where a class is described, it may be that the slander refers to a particular individual, and whether it does or not may be shown by other evidence. 2 Addison on Torts (Wood's Ed.) 378. When the language is ambiguous, and it is doubtful in what sense the publisher intended it, the question is in what sense the hearers understood it, for slander and damage consist in the apprehension of the hearers. Townshend on Lib. & Slan. sec. 334. Another standard text-book says: "Even when the meaning of the defendant's words is clear, or has been ascertained, the question remains:—Has he said enough? Was the imputation sufficiently definite to injure the plaintiff's reputation? Is it clear that it is the plaintiff to whom he referred? Unless these questions can be answered in the affirmative, no action lies. There must be a specific imputation cast upon the person suing." Odgers on Lib. & Slan. 118, 127, 128.

The matter complained of does not, it will be seen, mention the name of the plaintiff, or that of any other person. To show the application of the language used to the plaintiff, besides the circumstances before noted, the plaintiff called two of the defendants, and when pressed as to whom they meant, one of them says he could not tell whether they meant plaintiff or not; that they investigated so many charges that he could not keep count of them; that he thinks Caruth, Lutz, and Gooding were members of the board. The other witness says that they did not refer to any one in particular, that he had no person in his mind except the persons whose names were brought before them, that he heard who the commissioners were, but did not know them. Mr. Richeson, for himself and co-defendants,

stated that he was foreman of the grand jury; that the acts of the then and previous police commissioners were before the jury; that in the report, which was prepared by him, he referred to a majority, as shown by the proceedings of the board during the whole time of the alleged conspiracy; that he could not tell whether plaintiff was with that majority or not. The report was made with the advice of the circuit attorney, and without which, it is to be clearly inferred, it would not have been made. This grand jury at the same time returned an indictment against the plaintiff and another member of the board, charging them and two outside persons with having combined together to obstruct the administration of the laws relating to gambling, lotteries, and concerning the police force, and stating that pursuant thereto plaintiff and the other member of the board voted to remove the chief of police, without cause or hearing.

Now it is to be observed, in respect of much of this evidence, that the question of fact is not what was the intention of the defendants as to whom the published words should apply, but to whom did they apply; and, in the light of disclosed circumstances, to whom were they understood to apply? That these things were not said of all of the persons, who composed the board, is too clear to be questioned. It is a fair inference from the report and evidence that the objectionable words relate to those persons who from time to time—"for a considerable time," constituted the ruling majority, as to acts actually performed. The only circumstance put in evidence to show that plaintiff was one of that majority is the indictment. This having been made public along with the report does tend to prove the real issue of fact; but it does not furnish such conclusive proof that we ought to set aside the verdict. The report, as well as the indictment, does charge a corrupt combination. The thing brought about by this combination, according

to the indictment, was the vote of the plaintiff and one other to remove the chief of police. In the alleged defamatory matter this is but incidentally mentioned. The specific acts there set forth, as the result of the combination, are many and are mostly of a different character. It is plain to be seen that they are not charged as having been all done at the same time. Under the instructions given, and to which no exceptions were made, it was necessary for the jury to find that all of these things were said of and concerning the plaintiff, for the instructions speak of the defamatory matter as a whole and not of any particular portion of it. The jury might well have hesitated before coming to such a conclusion ; and it was their especial duty to find the facts.

This court rarely interferes with the verdict of a jury where there is any substantial evidence to support it, though the trial court has a large discretion in the matter. (56 Mo. 479 ; 68 Mo. 195 ; 79 Mo. 258). But in extreme cases this court must and will interfere, and that too whether the verdict be for plaintiff or defendant. *Whitsett v. Ransom,* 79 Mo. 258 ; *Spohn v. Railroad,* 87 Mo. 74; *Garrett v. Greenwell,* 92 Mo. 120. While different language is used in these cases, in the statement of the rule, it is safe to say that this court will, in no case, interfere with the verdict for defendant on the ground that it is against the evidence, unless it appears to our satisfaction that the verdict was the result of corruption, prejudice or passion.

Such is not the case here, and the judgment is affirmed. RAY, J., absent. The other judges concur.