CHARLES C. CRECELIUS, Respondent, v. PAUL H. BIERMAN, Appellant.

St. Louis Court of Appeals, November 20, 1894.

BY JUDGES ROMBAUER AND BIGGS.

1. **Slander**: APPLICATION OF WORDS USED. Where the words complained of in an action of slander do not identify the plaintiff, but may apply to another or others exclusively, it is always necessary to show by extraneous facts that they referred to the plaintiff, and were so understood by the hearers.

2. ———: PRIVILEGE OF WITNESSES. If slanderous language used by a witness in judicial proceedings is clearly pertinent or material to the inquiry, or the answers given by him are in direct response to questions propounded by the court or counsel, the privilege of the witness is absolute, and the language furnishes no foundation for an action.

3. ———: ———. Where this is not the case, the witness will be protected only if he believed, on reasonable grounds, that what he said always a question of fact.

BY BOND, J.

4. **Slander**: PRIVILEGE OF WITNESS. The rule is that statements of witnesses are privileged, when they are relevant, or believed on reasonable ground to be relevant, to the issues. A *prima facie* presumption of privilege is drawn from the occasion, which can only be rebutted by evidence that the statements are not within this rule.

*Appeal from the St. Louis City Circuit Court.*—HON LEROY B. VALLIANT, Judge.

REVERSED AND REMANDED.

*J. K. Hansbrough* for appellant.

Defendant's instruction offered at the close of the testimony, that, "upon the evidence adduced, plaintiff is not entitled to recover," should have been given. The statement of defendant being *prima facie* privileged, before plaintiff could recover, it devolved upon him to show affirmatively that the words alleged to have been spoken were not, relevant to the matters then under investigation; and not only not relevant, but spoken by the witness under the supposition that they were not relevant, and not in good faith. Newell on Defamation, 449, section 43; *Calkins v. Sumner*, 13 Wis. 193; *Liles v. Gaster*, 42 Ohio St. 631; *Hutchison v. Lewis*, 75 Ind. 55; Cooley on Torts [Ed. 1888], secs. 246–249; *Steineke v. Marx*, 10 Mo. App. 580; *Kirkpatrick v. Eagle*, 26 Kan. 384; *Shertliff v. Stevens*, 51 Vt. 501. There was no evidence showing, or tending to show, that the words alleged to be slanderous were irrelevant or impertinent; or that the defendant did not suppose they were relevant. Although they may have been irrelevant as a matter of fact, yet if the witness was not stopped by the court or counsel, and used the words under the supposition that they were relevant, there can be no recovery. *Steineke v. Marx*, 10 Mo. App. 580; *Calkins v. Summer*, 13 Wis. 193.

*Clopton & Trembly* for respondent.

BOND, J.—This is an action of slander for the speaking by defendant, while testifying as a witness on the trial of a certain case, of the following words:

"I want the note that he claims is held by his mother. (A note is handed the witness.) That is not the one; I want the note with the bungling forgery upon it to make it appear that it was in my possession. This is the note of November 3, appearing upon its face as if it had been held by me. There appears marked on it: 'Settled, renewed note, P. H. Bierman, trustee.' I state that is a stupid and bungling forgery. That note, to my recollection, was never in my possession, and certainly no such indorsement as that was ever made by me."

"Q. (By Mr. Roeder.) What note do you now refer to? A. The first note where it appears, 'Renewed, P. H. Bierman, trustee.' I will state that I never saw this note, to my recollection, until it was brought into court with this forgery upon it. It is no handiwork of mine."

The petition also alleged "that the defendant meant thereby that the plaintiff had feloniously forged the words, 'Settled, nenewed note, P. H. Bierman, trustee,' and had made and uttered said forgery."

The 'answer was a general denial.

At the beginning of the trial defendant objected to the introduction of any evidence, on the ground that the petition failed to state a cause of action, which objection the court overruled. Thereupon plaintiff offered in evidence the petition and answer in the case, wherein defendant was testifying when it was alleged the slanderous words were spoken. These pleadings disclosed that the object of said suit was to charge the defendant as trustee with a $2,000 note and interest, alleged to belong to the plaintiff therein, and that the defenses thereto were averments by defendant that he did not know of any such note; never had it in his possession; had not agreed to be bound as trustee therefor; that no sufficient facts existed to charge him

as such; and that he never knew anything of the indebtedness thereby evidenced.

Plaintiff then introduced the official stenographer, who made notes of the evidence given on the trial of said suit. This witness stated that his notes showed the following questions and answers thereto by defendant on the former trial:

"*A.* Mr. Bierman stated (reading from notes of the previous trial): 'In regard to the other note as having been given to me, I will state here positively that the note of November 3, which, by the way, Mr. Hansbrough, you will show it to me, which he claims to have been given to his mother.'

"*By the Court* (interrupting): Before we pass away from the stock, what is the date of the note he gave you for the stock?

"Mr. Bierman answered: I think October 31st, 1887.

"Mr. Roeder said: They are both of the same date, your honor.

"The witness said: I want the note that he claims I held for his mother. (The note is handed to the witness). Mr. Bierman said: That is a bungling forgery to make it appear that it was in my possession. This is the note of November 3d, appearing upon its face as if it had been held by me. There appears marked on it 'Settled, renewed note, P. H. Bierman, trustee.' I state that is a stupid and bungling forgery. That note, to my recollection, was never in my possession, and certainly no such indorsement as that was ever made by me.

"*By Mr. Roeder:* What note do you now refer to? *A.* The first note where it appears 'Renewed, J. H. Bierman, trustee.' That is all on that topic.

"*Q.* Go on. *A.* I will state that I never saw this note to my recollection, until it was brought into court

with this forgery upon it; it is no handiwork of mine."

This witness was cross-examined, to wit:

"*Q.* Mr. Bierman had been sworn as a witness in the case, hadn't he? *A.* Yes, sir.

"*Q.* He was testifying under oath in your presence? Yes, sir.

"*Q.* And was a party defendant in that case? *A.* Yes, sir.

*Q.* He was being examined, wasn't he, at the time when his statement was made, by the attorneys or attorney who represented the plaintiffs in that case? *A.* Yes, sir.

"*Q.* And the answers that he gave as repeated by you were answers to questions propounded by those attorneys? *A.* They were.

"*Q.* Wasn't Mr. Crecelius, the plaintiff in this case, seated at the counsel table with the attorneys who were examining Mr. Bierman? *A.* Yes, sir.

"*Q.* And, as far as you observed, prompting those attorneys in their cross-examination of Bierman? *A.* I think he was."

Plaintiff in this case testified on direct examination to wit:

"*By Mr. Clopton:* Here is what I have reference to written in pencil, indorsed across the face of this paper, 'Settled by new note, P. H. Bierman, trustee.' Who wrote those words? *A.* I did.

"*Q.* Were you a witness in the case of Annie C. Crecelius against Paul H. Bierman? *A.* Yes, sir.

"*Q.* Were you called to testify before Bierman was called to testify? *A.* Yes, sir.

"*Q.* State what your testimony was as to who made that pencil memorandum on that note, which you now hold, when you were being examined? *A.* The same as I have just stated.

"*Q.* What did you state? *A.* I have just stated that this note (I had the other note then) that I had gotten this note from Bierman on which .was indorsed the words, 'Without recourse on me, P. H. Bierman, trustee,' and taken to my mother for the purpose of taking up this old note with it. That was the occasion for marking that old note that way, as I left it with my mother, so that there ought to be no mystification about it. I will state here, that it is intended to read this way, 'Settled by new note, order of P. H. Bierman, trustee,' but the word 'order' was omitted, or may be rubbed out, I don't know."

On cross-examination plaintiff admitted that the two notes, referred to in his answers above, were in controversy in the former suit brought by his mother against the defendant, and had been introduced in evidence by her on the trial of said suit.

The note or paper, whereon. the memorandum referred to in the foregoing answers was written, was not offered in evidence on the present trial. Defendant offered no evidence, but asked an instruction at the close of plaintiff's case that there could be no recovery, which was refused. The jury returned a verdict for plaintiff for $500. The defendant appealed.

Waiving any discussion of the sufficiency of the alleged slanderous words contained in the petition to impute the crime of forgery, we do not think there is any substantial evidence in this record to support the finding for the plaintiff. The rule of law governing the responsibility of witnesses for their utterances under examination, as it exists in this and most other states, is that statements so made are privileged when they are relevant, or believed on reasonable grounds to be relevant, to the issues on trial. *Hyde v. McCabe,* 100 Mo. 412; *Steinecke v. Marx,* 10 Mo. App. *580; *Calkins v. Sumner,* 13 Wis. 193; *Liles v. Gaster,* 42

Ohio St. 631; *Hutchison v. Lewis,* 75 Ind. 55; Newell on Defamation, page 418, section 16, and page 449, section 43.

A *prima facie* presumption of privilege is drawn by law, in favor of the statements of a witness in judicial proceedings, from the occasion; which can only be rebutted by evidence showing, *first,* that such statements are irrelevant, and, *secondly,* that they were made without reasonable or probable cause to believe them to be relevant to the matters under investigation. When such evidence is adduced, all presumption of privilege ceases, and malice is at once implied, if the words spoken are actionable *per se.*

According to my own view, in the case at bar, there were not only reasonable grounds for the defendant to believe his statements on the trial of the former suit to be pertinent to the issues therein, but such statements were, under the undisputed facts in this record, clearly material to the inquiry in that suit, and should have been held to be absolutely privileged by the trial judge. Odgers on Libel and Slander [2 Ed.], top page, 139, *et seq.; Callahan v. Ingram,* 26 S. W. Rep. p. 1020.

The sole object of the former suit against the defendant was to charge him as trustee with the amount of a $2,000 note, alleged therein to have been given by the plaintiff in this action to his mother, the plaintiff in that action; and in furtherance of such purpose it was alleged that the defendant knew of the existence of said note and the rights thereby attaching to certain land conveyed in trust to secure the same, and other indebtedness held by himself, and that he promised to pay said note and in point of fact took a renewal note therefor payable directly to himself, and that, notwithstanding this knowledge on his part of said note and his promise to pay the same, he absorbed

to his own use the proceeds of the foreclosure of said deed of trust made to secure said note, and also his own debt.

Defendant's answer specifically denied all these allegations, and averred, among other things, to wit: "That defendant never *held* said $2,000 note mentioned in the petition, or any other, as trustee for plaintiff."

This allegation as to the nonpossession of the note by defendant was denied by the reply, and became an *issue* on the trial of said suit. The note in question was offered in evidence. It bore an indorsement purporting to have been made by defendant in the following terms: "Settled, renewed note, P. H. Bierman, trustee." The language of the defendant, *supra*, referring to this indorsement, was clearly admissible evidence in rebuttal of any logical deduction that the note had been *in his possession*, which might have been drawn by the trier of the fact from the appearance of the above indorsement thereon over defendant's signature. In denying the genuineness of said indorsement, he expressly said that it was put there to furnish evidence of his prior possession and *knowledge* of said note. His testimony, as thus given, also tended to negative any knowledge of the existence of said note, inferable from its having been in his hands; and it was, therefore, pertinent to the essential issue in the pending suit, which was the alleged knowledge of defendant of the existence of said note, and the rights of the holder thereof to participate as joint beneficiary in the proceeds of the deed of trust, and his alleged agreement to act as trustee for the collection of said note. Hence, I think it is clear that the testimony of defendant in the former case was in the strictest sense of the term relevant to the issues therein, and precludes an action for slander for words thus

spoken. *Hyde v. McCabe, supra.* I, therefore, hold the judgment herein should be reversed only. My associates, however, for the reasons given in their separate opinion, think it should also be remanded. It will accordingly be reversed and remanded. Judges ROMBAUER and BIGGS concur in the result.

SEPARATE OPINION OF JUDGES ROMBAUER AND BIGGS.

ROMBAUER, P. J.—As this case presents some propositions of general interest, and as it is important that the trial court should be advised how to proceed in its retrial, we deem it necessary to state the views of the majority of this court more fully than they are stated in the foregoing opinion.

The facts shown by the record are these: The plaintiff's mother sued the defendant in a former action, claiming that he was chargeable as her trustee for $2,000. One of the instruments given in evidence at that trial was a *note* of $2,000. This note contained an indorsement as follows: "Settled by new note, P. H. Bierman, trustee." The plaintiff in the present action was a witness for his mother in the former action, and, while upon the witness stand, testified that the above indorsement was not written by Bierman, but by the witness himself, and was a mere memorandum, intending to convey the idea that the note was settled by a new note given to the order of P. H. Bierman, trustee. It nowhere appears in the record that this memorandum or indorsement was ever offered in evidence against Bierman, the defendant, or that it was ever charged by anyone that it was in his handwriting, or that either the plaintiff in the former action, or anyone else, ever claimed any evidentiary force *for this memorandum* as charging the defendant, Bierman, with anything whatever.

In the trial of the former action, after the plaintiff in this action had testified, and had expressly disclaimed that the memorandum was in the handwriting of Bierman, and had further stated that the memorandum written by himself, the witness, the defendant, Bierman, took the stand as a witness in his own behalf. He was not asked, either by his counsel or by the court in whose handwriting the memorandum was, but, of his own volition and without any apparent reason for so doing, stated that it was "a stupid and bungling forgery," and that he had never seen the note until it was brought into court, "with this forgery upon it."

The plaintiff thereupon instituted the present suit for slander, and, upon the facts above stated appearing, he recovered a judgment for $500. The judgment is challenged on two grounds mainly: *First*, that there was no evidence in the case that the defendant, in using the words, referred to the plaintiff, and, *next*, that the defendant was a witness in a judicial inquiry, and there is no evidence that he spoke the words maliciously, that is, without a reasonable or probable cause to believe them to be relevant to the matters under investigation.

Under our statutes, it is sufficient if the petition alleged that the words were spoken of and concerning the plaintiff without setting out any extraneous facts showing their application. Where, however, the words spoken do not identify the plaintiff, and may apply to another or others exclusively, it is always necessary to show by extraneous facts that the words had reference to the plaintiff and were so understood by the hearers. On that subject the rule is the same whether the slander be oral or written. *Caruth v. Richeson*, 96 Mo. 186. Now, in the case at bar, it nowhere appears that the defendant knew that the plaintiff had written the words

claimed to be a forgery. It does not appear that the defendant was present when the plaintiff testified to that effect. The words spoken do not impute any offense *to the plaintiff* in direct terms, and not being shown, by any extraneous evidence adduced, to have been applied to the plaintiff, the judgment must be reversed as one not supported by substantial evidence. To that extent all the members of the court concur.

The rule is universal that a witness is *prima facie* protected by the privilege which necessarily surrounds judicial inquiries in all cases. Where the words spoken by him are clearly pertinent or material to the inquiry, or where the answers given by him are in direct response to questions propounded to him by the court or counsel the privilege is absolute. But, where the matter stated by him is not pertinent to the inquiry before the court, or not spoken in direct response to questions propounded as above, the privilege is relative. If, in the latter case, the witness makes any statement which he deems relevant on reasonable grounds, he will be protected; but the question whether he did have reasonable grounds to believe that the statement was relevant, or whether he uttered the words maliciously without so believing, is always a question of fact for the jury. That this is the true American rule is shown by the most careful text writers and the best considered decisions; and the only case in this state which has any bearing on the subject is to the same effect. *Hyde v. McCabe,* 100 Mo. 412; Odgers on Slander, *191; *White v. Carroll,* 42 N. Y. 161; *Smith v. Howard,* 28 Iowa, 51; *Barnes v. McCrate,* 32 Me. 442; *Calkins v. Sumner,* 13 Wis. 193; *McLaughlin v. Cowley,* 127 Mass. 316; *Shadden v. McElwee,* 86 Tenn. 146.

Applying this rule to the case at bar, it is evident that the words spoked by the witness are not protected by absolute privilege. They were not spoken in direct

response to a question propounded by court or counsel, nor were they clearly pertinent to the matter under inquiry. It distinctly appeared that nothing was claimed against the present defendant by reason of the memorandum or indorsement in the former action, and hence it was immaterial who made it, or how it came to be made. That fact appears by plaintiff's petition in this case, and by the entire record before us. For, all that appears, the defendant voluntarily diverged from the line of examination for the purpose of defaming somebody. It is true that the question, whether he believed, on reasonable grounds, that his statement was pertinent to the inquiry, was a remaining issue, but that question was one of fact and not of law, and, having been submitted to the jury on an appropriate instruction, their verdict would be conclusive against the defendant, but for the fact that there was no substantial evidence on another point essential to plaintiff's recovery. Judge BIGGS concurs in the views herein expressed.