LOUIS S. KENWORTHY, Respondent, v. THE JOURNAL COMPANY, Appellant.

Kansas City Court of Appeals, March 5, 1906.

1. **LIBEL: Common Law: Statute.** At common law libel is a malicious defamation in printing or writing, signs or pictures tending to blacken the memory of the dead with intention to provoke the living; or to blacken the reputation of one who is alive and to expose him to public hatred, contempt or ridicule; and the statutory definition is substantially the same, and in considering an alleged libel, it is immaterial whether it be considered from the standpoint of the statute or the common law.

2. ————: **Undesignated Person: Pleading: Evidence.** The general rule is, and especially in this State, that when a person not designated in a libelous publication itself is the one de-

famed, the pleading should aver that he was intended and re-
sort must be had to extraneous facts to show that he was in-
tended, or the action will fail.

3. ———: ———: Evidence. A publication set out that seven
witnesses, giving their names, had claimed attendance in a cer-
tain trial; that one giving his name, had been arrested for
perjury at the trial, and that two more were to be arrested for
perjury. One of the seven named brought his action against
the publisher and averred the libelous matter was concerning
him, but offered no proof sustaining such allegation. *Held*, that
it was incumbent upon him to show by proof that he was in-
tended as one of the parties to be arrested, and without such
proof his action must fail. **Ellison, J.,** dissenting in a separate
opinion.

4. ———: ———: ———: **Ellison, J.,** dissenting. The publication
being libelous *per se* and the names of the seven witnesses be-
ing given therein, an action accrued to each one of the seven
without proof *aliunde* that he was intended as one of the two
to be arrested, since each of the seven were defamed and
brought into contempt by the publication.

5. ———: ———: Slander: **Ellison, J.,** dissenting. The distinc-
tion between libel and slander is noted and certain slander
cases are held not applicable to this action.

6. ———: ———: Perjury: Suspicion: **Ellison, J.,** dissenting.
Whether the publication constituted a charge of perjury, still
it was libelous, *per se*, and in associating plaintiff's name with
the unnamed persons charged with perjury without explanation
leaves him to be suspected as one of them, and is therefore ac-
tionable *per se*.

7. ———: Innuendo: Perjury. Where an action is libelous *per
se* an innuendo is unnecessary and may be regarded as sur-
plusage; and though the innuendo alleged that the publica-
tion charged perjury it need not be proved.

Appeal from Jackson Circuit Court.—*Hon. Hermann
Brumback,* Judge.

REVERSED AND REMANDED.

*Frank P. Sebree* for appellant.

(1) The court committed error in refusing the de-
murrers to the evidence, offered at the close of plaintiff's

evidence and at the close of all the evidence, because there was no cause of action proven against the defendant. 2 Starkie on Slander, 661; 1 Jaggard on Torts, 484; Odgers on Libel and Slander, p. 127; Caruth v. Richeson, 96 Mo. 186; Creceliue v. Bierman, 59 Mo. App. 513; Leonard v. Allen, 11 Cush. 241 (Mass.); Smart v. Blanchard, 42 N. H. 147; Harvey v. Coffin, 5 Blackford 566; Jones v. Davers, 1 C. R. 496, case No. 16; Wiseman v. Wiseman, Cro. Jac. 107. (2) The case ought to be reversed without remanding. Authorities, supra.; Heller v. Pulitzer Pub. Co., 153 Mo. 205: Sands v. Marquardt, 113 Mo. App. 490, 87 S. W. 1011.

*Halstead & Halstead* and *Reed, Yates, Mastin & Howell* for respondent.

(1) The petition states a cause of action. Magnet v. O'Neill, 51 Mo. App. 35; Price v. Whitely, 50 Mo. 439; 18 Am. and Eng. Ency. Law (2 Ed.), pp. 867 and 989; Johnson v. St. Louis Post-Dispatch Co., 65 Mo. 539; McGinnis v. Knapp, 109 Mo. 1. c. 150. (2) The demurrer to the evidence was properly overruled. McGinnis v. Knapp, 109 Mo. 1. c. 149; Johnson v. St. Louis Post-Dispatch Co., 150 Mo. 1. c. 540; Forbes v. Johnson, 50 Ky. 48; Hardy v. Williamson, 86 Ga. 551; Wofford v. Meeks, 129 Ala. 349; Maybee v. Fisk, 42 Barb. (N. Y.), 326; Cook v. Rief, 52 N. Y. Sup. 302; Fernstermaker v. Tribune Co., 12 Utah 439, and 13 Utah 532; State v. Armstrong, 106 Mo. 395; Farley v. Evening Chronicle Co., 113 Mo. App. 216, 87 S. W. 564.

BROADDUS, P. J.—The plaintiff's suit is for libel. The following taken from defendant's statement embraces sufficient of the petition for the purposes of the case:

"The following excerpts are believed to cover all material parts of the publication in question. The headlines were:

" 'AS A PERJURER.

" 'ALLEN V. ELLIS ARRESTED BY THE METROPOL-
ITAN.—WITNESS IN A DAMAGE SUIT.

" 'He Told of Seeing W. W. Decoo Thrown From
Car.—In County Jail He Tells of Alleged
Promises Made for Giving False Testi-
mony in 1902.—Other Arrests Threatened
by the Company.'

"Then follows the body of the news item, stating
the arrest of Ellis, at the instance of the Metropolitan
company, upon a charge of giving perjured testimony in
the damage suit brought by Decoo against the company
in 1902, and then comes this:

" 'According to the arrested man, two or three other
witnesses in the Decoo case will be arrested as soon
as they can be located. . . .

" 'When the case was called March 18, 1903, these
witnesses appeared and claimed one day's attendance:
Mrs. Lizzie Gray, A. V. Ellis, Dr. H. B. Coleman, Louis
F. Kenworthy, William Holmes, G. W. Lilly, I. Freid-
man. On June 25 William Holmes and R. W. Tobin
claimed one day and Allen V. Ellis two days, the latter
being the witness now under arrest.

" 'Of the above witnesses, it is *more than probable
that three* will be arrested *charged with giving perjured
testimony.* As to who they are, the Metropolitan people
refused to state until the warrants are served, but it is
known that one of them is a negro.'

"Under the sub-heading of 'the company's story' and
among other statements of an official of the street rail-
way company, comes this:

"He then said in reference to the Decoo case: 'This
is another one of the cases in which the plaintiff *or one
or more of his witnesses have been arrested and are now
awaiting trial for alleged perjury,* one man has already
been convicted and is serving his sentence at the present
time. The company proposes to keep up this investiga-
tion of fraudulent witnesses and cases and will push

to the limit every case in which sufficient proof can be obtained to justify the filing of information by the prosecuting attorney. A number of other cases in connection with *damage suits* are now being worked up, and as fast as necessary information can be obtained will be turned over to the prosecuting attorney's office for his action. The company is determined, and will spare no work or effort to run down every fraudulent case and every case in which perjury has been committed.'

"Under the sub-heading 'Ellis talks in jail,' appears, among other things, the following:

" 'I *know* there are *two or three others going to be arrested,* because when I was making my confession in the office with a big crowd of people, officers, I guess, I heard them talking about *getting a warrant* for (giving two names) and so I reckon I will have company. I know this much, too; if I get stuck for this I'll bet I know *one man who goes along.* He's certainly given me the hot end of this deal.

" 'The prosecuting attorney yesterday *drew up several informations* but stated that until the parties wanted under them *are arrested* he did not deem it policy to disclose the names. He did not state that these documents referred to *witnesses or to the plaintiff in the Decoo case.* But it is probable that they are a result of the damage case instituted by Decoo.'

"Plaintiff then states that he 'did on March 18, 1903, claim one day's attendance as a witness in said suit of Decoo v. The Metropolitan Street Railway Company and that plaintiff is the person named and designated as Louis F. Kenworthy in said article so published by defendant.'

"Then comes the following innuendo:

" 'Plaintiff states that in and by said article hereinbefore set out, published by defendant as aforesaid, defendant charged that *plaintiff* had been guilty of the crime of perjury, and that said Ellis, in his confession, had *accused* plaintiff of having *committed the crime of*

*perjury,* and that the prosecuting attorney was preparing to *prosecute plaintiff for said crime,* and that plaintiff was suspected by the prosecuting attorney, the police officers and the officials of the Metropolitan Street Railway Company of having *committed the crime of perjury* and that plaintiff would be *arrested charged with the crime of perjury.*

" 'That the said article published by defendant as aforesaid *concerning plaintiff* was and is libelous; that the same *was and is false;* that the same was and is *malicious;* that there was no *justification* therefor, as defendant well knew.'

"The petition, lastly, alleges the circulation and wealth of defendant and prays judgment for $5,000 compensatory and another $5,000 as punitive damages.

"*The answer* was a general denial."

The principal question raised in the case is: Did the defamatory publication designate plaintiff as one of the persons defamed? The decisions are almost uniform that, where publication is defamatory in its character, an allegation by way of innuendo that plaintiff was the person defamed, other proper averments made, the petition alleges a good cause of action. Under this rule, the petition herein is held to be sufficient. And, although the plaintiff's petition alleges that the defamatory matter was published of and concerning him, yet if it does not so appear by the publication itself, the plaintiff was not entitled to recover as he offered no extraneous evidence showing to prove that fact.

The libel charges that a certain person in the Decoo case named Allen V. Ellis had been arrested for perjury, and that among the witnesses called on a certain day, there appeared and claimed one day's attendance, as such witnesses, the said Ellis and six other persons named, including plaintiff, and that, "of the above witnesses, it is more than probable that three will be arrested charged with giving perjured testimony. As to who they are, the Metropolitan people refused to state,

but it is known that one of them is a negro." It is argued at length, and authorities cited to the effect, that the publication does not identify plaintiff as one of the witnesses who would probably be arrested and charged with giving perjured testimony. "The law is too well settled that if the defamatory matter points to no person in particular, it then becomes a question of fact whether it does or does not apply to the plaintiff. Even where a class is described, it may be that the slander refers to a particular individual and whether it does or not may be shown by other evidence." [Caruth v. Richeson, 96 Mo. 186.] The foregoing was quoted by the court from Addison on Torts, and the court further quoted from Odgers on Lib. and Slan. the following: "Was the imputation sufficiently definite to injure the plaintiff's reputation? Is it clear that it is the plaintiff to whom he referred? Unless these questions can be answered in the affirmative, no action lies. There must be a specific imputation upon the person suing." The court seems to have based its decision upon the authorities quoted. The charge was a general one against a corrupt combination of unprincipled and notorious persons holding offices of State under appointment of the Governor, none of whom were named. The petition was sufficient, but the evidence failed to show to the satisfaction of the jury that plaintiff was intended to be charged as a member of the combination, and as a result the plaintiff failed to make out his case.

In Harvey v. Coffin, 5 Blackford 566, the plaintiff was one of three sons of Jethro Coffin. The defendant was charged with having said that one of the three stole corn, etc. The court held that it was not actionable to charge one of three persons with having committed larceny unless the one of whom the defendant spoke can be identified. In Jones v. Davers, 1 C. R. 496, the slanderous words charged were, "One of you is an extortioner," speaking to three persons; held that the charge was not actionable. There are other English cases to

the same effect. In Crecelius v. Bierman, 59 Mo. App. 513, it is held that, where "the words spoken do not identify the plaintiff, and may apply to another or others exclusively, it is always necessary to show by extraneous facts that the words had reference to the plaintiff and were so understood by the hearers. On that subject, the rule is the same whether the slander be oral or written." The question decided in Forbes v. Johnson, 50 Ky. 48, was as to the sufficiency of the petition alone, a demurrer having been sustained by the trial court on the ground that it did not state a cause of action. The court held that it did, and further decided that a charge that one or the other of two persons committed a crime is in truth an imputation against both. In Hardy v. Williamson, 86 Geo. 551, the charge was that, "Either by erroneous classification, or by classification obtained by the brick company, by collusion with the sub-engineers, or some of them, the work of the Chattahoochee Brick Company has been overestimated to the extent of at least a hundred thousand dollars." On demurrer the petition was held not to state a cause of action. It was held that this was error, that the petition stated a good cause of action, and the court, anticipating the trial on the merits said, "it may turn out on the trial that the expression 'or some of them' was used because the writer did not mean that all were guilty, but that the plaintiff alone or with others was guilty." In Wofford v. Meeks, 129 Ala. 349, the question arose on the sufficiency of the petition. It was held: "Where a libelous publication is directed against a particular class of persons composing it, each of the persons composing the class, or any one of the class, may maintain an action therefor, upon showing that the words applied to them." The charge imputed to the county commission the prostitution of the public finances for wicked, corrupt and selfish purposes. In Fenstermaker v. Tribune Co., 12 Utah 439, the holding is that, "Where a libelous article refers to a family or class of persons, any one of the family or class

may ·maintain the action by proving that the article had application to him, *the determination of which is within the province of the jury."* The charge was, "That the Fenstermaker family, residing at Box Elder Ranch, had turned a little child out on the desert to die." The plaintiff was the head of the family.

State v. Armstrong, 106 Mo. 395, was a prosecution for criminal libel. The defendant had caused to be sent to the complaining witness an envelope addressed to her, on the corner of which were the words "Bad Debt Collecting Agency." The trial resulted in a conviction of the defendant. On appeal, the court affirmed the judgment. The circumstances of the case showed that she was the person meant to be either the bad debtor or bad debt collector, and it was immaterial which, as, in any event, she was defamed. In Farley v. Evening Chronicle Publishing Co., 113 Mo. App. 216, 87 S. W. 565, the plaintiff was the person named, to whom the defamatory article referred, which was accompanied by his picture. It was shown that another person of the same name was intended as the subject of the publication. But the court held it a libel on the plaintiff notwithstanding. In the celebrated case of McGinnis v. Knapp, 109 Mo. 131, the question before the court was not one as to the identity of the person referred to in the defamatory publication, for the article itself mentioned the plaintiff, but as to whether or not it was defamatory.

The common-law definition of libel is as follows: "A malicious defamation expressed in printing or writing, or by signs or pictures, tending to blacken the memory of one who is dead, with the intent to provoke the living; or the reputation of one who is alive, and to expose him to public hatred, contempt, or ridicule." 2 Bouvier's Law Dictionary, p. 42. Or, as stated in Anderson's Law Dictionary, 617, a "malicious defamation of a person made public, either by printing, writing, signs or pictures, in order to provoke him to wrath, or

expose him to public hatred or contempt and ridicule."
The definition of libel in section 2260, Revised Statutes
1899, is substantially the same. The intent of the Leg-
islature was to make all classes of libel misdemeanors
and actionable *per se* and not to make publications libel-
ous other than at common law. [Sec. 2260, supra, and
sec. 635, supra.] Such being the status of the law, it is
immaterial whether we consider the main point in ques-
tion from a standpoint of the statute or the common law.

And when we come to consider in any case, whether
it be slander or libel, to whom the defamatory matter,
when such person is not designated, was applied, the
rule is precisely the same. In each instance, the ques-
tion is whether the defamation refers to any particular
individual. [Caruth v. Richeson, supra.] Such being
the rule, all the authorities mentioned are equally per-
tinent to the question, in all of which, except the Ken-
tucky case, the rule is, and especially in this State, that
when the person is not designated in the publication
itself as the one defamed, resort must be had to extran-
eous facts for that purpose, or else the action fails.

"So if the words spoken or written, though plain in
themselves, apply equally well to more persons than one,
evidence may be given both of the cause and occasion of
the publication, and of all the surrounding circumstan-
ces affecting the relation between the parties, and also
of any statement or declaration made by the defendant
as to the person referred to. The plaintiff may also call
at the trial his friends or those acquainted with the cir-
cumstances to state that on reading the libel they at once
concluded that it was aimed at the plaintiff. If the ap-
plication to a particular individual can be generally per-
ceived, the publication is a libel on him, however, gen-
eral its language may be." [Odgers on Libel and Slan-
der, 127.] "Where the words spoken or written [libel or
slander], though plain in themselves, apply equally well
to more persons than one, evidence may be given both
of the cause and occasion of publication, and of all the

surrounding circumstances affecting the relation between the parties. . . . The plaintiff may also call at the trial persons acquainted with the circumstances to state that on reading the libel they at once concluded that it was aimed at the plaintiff." [Newell on Slander and Libel, 259.] The words in brackets, "libel or slander," are ours.

In the case at bar the words are plain in themselves, but they apply equally as well to the other witnesses named. Such being the case, the burden was upon plaintiff to prove their application to himself under the foregoing rule. Reading the charge, it is impossible from its entire contents which of the six persons named were the objects of the defamatory publication. Case after case, almost innumerable, might be cited to sustain the foregoing conclusion. And we cannot perceive how it could be otherwise. The plaintiff having failed to show the application of the words to himself, the cause is reversed and remanded.

*Johnson, J.,* concurs; *Ellison, J.,* dissents in a separate opinion.

ELLISON, J. (dissenting).—I look upon the decision of the majority as so harmful in its consequences that I am compelled to dissent. After stating that a suit for personal injury had been prosecuted against the Metropolitan Street Railway Company of Kansas City, and that one Ellis was a witness therein against the company; that he had been arrested for perjury and had confessed that his story of the accident was made up, the material portions of the article complained of are as follows:

"When the case was called March 18, 1903, these witnesses appeared and claimed one day's attendance: Mrs. Lizzie Gray, A. V. Ellis, Dr. H. B. Coleman, Louis F. Kenworthy, William Holmes, G. W. Lilly, I. Friedman. On June 25th, William Holmes and R. W. Tobin

claimed one day and Allen V. Ellis two days, the latter being the witness now under arrest.

"Of the above witnesses it is more than probable that three will be arrested charged with giving perjured testimony. As to who they are the Metropolitan people refuse to state until the warrants are served, but it is known that one of them is a negro."

It will be seen that plaintif is named as one of seven witnesses and that it is charged that three of the seven will be arrested for perjury. Plaintiff proved the publication and that he was one of the witnesses and was the person named in the article. There can be no doubt that the publication, if applicable to plaintiff, was a libel *per se*. [Ukman v. Daily Record, 189 Mo. 392; State v. Powell, 66 Mo. App. 598.] Nor that the charge therein is tantamount to an accusation of perjury. [Johnson v. Dispatch Co., 65 Mo. 539; Nelson v. Musgrave, 10 Mo. 648; Price v. Whitely, 50 Mo. 439.] Being a libel *per se,* if applicable to plaintiff, no further evidence was necessary than the article itself. [McCloskey v. Pulitzer Pub. Co., 152 Mo. 339, 347.]

The case therefore presents the question whether to falsely and maliciously publish that three of seven named persons are guilty of perjury, or are to be arrested for perjury, is a libel on each of the seven without proof *aliunde* the article, that the party plaintiff was one of the three. My associates insist that, as no one of the seven witnesses was named as one of the three to be arrested for perjury, no one was particularized or individualized as the person charged. The base or underlying idea of their opinion is that there can be nothing defamatory in the article unless the publisher intended to specially charge plaintiff with perjury; while I think it a libel to publish plaintiff's name (without explanation) in the connection and manner above set forth, regardless of whether it was actually intended to specifically charge that he had committed that crime. I recognize that it is well-established law that a publica-

tion, which would be libelous if applied to an individual, would not be so if published of an entire class; as that all lawyers are shysters; or all doctors are quacks. For, in such instances, the publication is mere generalization and by its very breadth carries with it the understanding that the publisher could not know what he published was true and could not have intended any individual further than as he might be a member of a large class of the general public, though there are publications where the charge is against a class or group, which may be so worded as to clearly particularize the individuals meant. As in Gidney v. Blake, 11 Johns. 54, where the charge was, "Your children are thieves." In that charge certain children were designated and it was held that each might maintain an action. So also of the charge, "Your boys stole my corn." [Maybee v. Fisk, 42 Barb. 326.] In this connection, the cases of Wofford v. Meeks, 129 Ala. 349; Hardy v. Williamson, 86 Ga. 551; Fenstermaker v. Tribune Co., 12 Utah 439; and Ryckman v. Delevan, 25 Wend. 186, are of value. But none of those cases apply to the present difference between me and my associates, since they refer to a charge against all of a group; while, in this case, the charge is said to refer to only a part of a group, i. e., three out of seven; and hence my associates' contention as to a lack of individualizing in the article under consideration. In such contention, I consider that the real hurtful tendency and meaning of the article and the chief element in libel is left out of view. I readily concede that in libel (as well as slander) it must be shown that the plaintiff was individualized and was the party intended to be defamed. And since, as just stated, there was no evidence outside the publication itself that plaintiff was intended; the question is, Was such publication itself a libel upon the plaintiff? In order to get at the question in a plain way, I will state what a libel is, and then simply inquire whether the article published by defendant affects the plaintiff within the meaning of a

libel. The statute (section 2259, Revised Statutes 1899) says that a libel is the malicious defamation of a person by any printing which tends to provoke him to wrath or expose him to public hatred, contempt or ridicule, or to deprive him of the benefits of public confidence and social intercourse. The printing in controversy was that the plaintiff was one of seven witnesses in a certain case wherein perjury had been committed, and that three of the seven were to be arrested as perjurers. The publication was made of the plaintiff, for he is pointed out by being named in the article as one of the seven. This is, therefore, unlike that class of libels where names are omitted, which makes proof necessary to show who was intended. It was intended to charge and was charged, that plaintiff was one of seven persons, three of whom were perjurers. Will not such a publication provoke each of the seven to wrath? Will it not tend to expose each to hatred and contempt? Will it not tend to deprive each of public confidence and social intercourse? If the publication will do any of these things, the statute says it is a libel. Does not the article excite the suspicion of the public against each of the seven that he is one of the three perjurers? Is not its tendency, therefore, to deprive each of public confidence and to cause him to be held in contempt and hatred? Suppose seven men are named and three of them are stated to be thieves; will either of the seven be able to obtain employment of trust or confidence? If seven persons are named with the statement that three of them are infected with smallpox, would not all seven be avoided? Suppose the names of two (or seven) virtuous women are published with the statement that one of them is a prostitute. Has no harm been done? Has no one been scandalized? Yet, if such a case should unfortunately arise, my brethren, overlooking that to publish a good woman's name in such insinuating, suggestive and indecent connection would itself be a libel, must hold that the publisher should go unwhipped, unless it could be shown which

one of the two he meant. A showing generally impossible to make; thus leaving both women without redress, while the name and reputation of each has become a byword. In the publication in question, it is of no consequence that plaintiff was not named as one of the three who were to be arrested for perjury, so long as he was named as one of the seven of which the three were a part, and was not excluded from the three, for the reason that he was thus left affected in the manner the statute designates as libelous. To link plaintiff's name with others and publish that three of the whole number were perjurers, in such manner that it cannot be known by readers of the article but that plaintiff was one of the three, is of itself a libel. In such state of case, it is altogether unnecessary to show, *aliunde* the article, that the publisher specially intended to charge him with being a perjurer. The publication itself shows, that even if it was not the object to charge him with perjury, it was manifestly intended to put him before the public in such humiliating and scandalous predicament as to bring the article within the terms of the statute.

2. Though it is not necessary to so decide, yet I think it might well be said that the article does, practically and in effect, charge plaintiff as being himself one of the accused. A wrongdoer must be held to have intended the natural consequence of his act. [McGinnis v. Knapp, 109 Mo. 131, 148, 149.] Defendant, failing, as I think, to distinguish between libel and slander and to bear in mind that spoken words, which would be insufficient in slander, will become a libel when printed and published (Ukman v. Daily Record Co., 189 Mo. 378), has cited some old cases in slander to the effect that a charge against one of several named persons is not a slander against either, unless it was proven that the party suing was understood to be meant by those who heard the charge. Thus, a charge that, "One of Jethro Coffin's sons stole corn," was not a slander of either of the sons, unless it was shown which one was intended

to be charged. [Harvey v. Coffin, 5 Blackf. 566.] So to say of three persons, "One of you is an extortioner," is not slander without showing that the speaker was understood to mean a particular one of the three. [Jones v. Davers, 1 C. R. 496.] But, in the light of the statutory definition of libel, and as given in Minter v. Bradstreet, 174 Mo. 485, is it not beyond question, that, if those spoken charges had been printed and published, they would have constituted a libel *per se* against either of Coffin's sons, or either of the three in Jones v. Davers?

The question has been directly decided in Forbes v. Johnson, 11 B. Monroe 48, where the publication was that one or the other of two persons had fraudulently altered a note. It could not be told from the article which of the two was meant, yet it was held to be, in effect, a charge against either, and that an action for libel could be maintained by either. The court said that the charge, "imports that the fraudulent alteration was committed by either John or James Forbes, and as it does not discriminate between them but is equally a charge against each, we are of opinion that it is in effect a charge against both, and that either and each may sue for his libel, applying the charge to himself. If each has not the right to maintain the action for words importing that one or the other of them (without further discrimination) had been guilty of a crime, it cannot be maintained by either. And the willful libeler might shield himself from responsibility by making his charges in the alternative against two, though in fact the mischief to each would be substantially the same as if he had charged both jointly or each separately. A charge that one or the other of two persons committed a crime, is in truth, an imputation against both, and gives to each a right of action. It was not necessary to introduce any extraneous matter in order to point the charge against the plaintiff, because the alleged libel itself contains enough to authorize its application to him."

In support of its argument on this branch of the case, defendant has cited several authorities, neither of which I consider to be in point. The principal case is that of Caruth v. Richeson, 96 Mo. 186. The article charged to have been libelous did not mention Caruth's name, and the plaintiff accepted as an issue in the case whether he was intended to be charged, and the jury returned a verdict for the defendant on the ground, as stated in the verdict, of "sufficient proof not having been furnished that said Caruth was meant in the publication uttered by defendant." The plaintiff in that case entered upon the issue as to whether he was meant by the publication and the jury found he was not. But in this case the plaintiff is named and it was meant to connect his name with three perjurers without stating he was not one of them.

But whether the publication should be considered a charge of perjury against the plaintiff is, in my opinion, of no consequence, since I do not hesitate in the conclusion that the publication was a libel *per se* against the plaintiff in merely associating his name with the unnamed persons charged with perjury in such way as to leave him to be suspected to be one of them, as I have herein endeavored to explain. And being a libel *per se*, no further evidence was necessary than the article itself. [McCloskey v. Pulitzer Pub. Co., 152 Mo. 339, 347.]

3. The petition alleges by way of innuendo that the publication meant to charge plaintiff with the crime of perjury. No evidence was offered in support of the innuendo. Where the publication, as in this case, is a libel *per se*, an innuendo is unnecessary. It may be disregarded and rejected as surplusage. [Callahan v. Ingram, 122 Mo. 355, 356-358; Hudson v. Garner, 22 Mo. 423; Newell on Slander, 618; Starkie on Slander, 467.] The petition is thus left to stand upon its statement of a case of libel *per se*, to which nothing extraneous need be added to point its application.